7989

HUMPHREY v. PALMER.

JURY.—A trial Judge does not abuse his discretion in refusing to continue a case on the ground that one of the jury commissioners is the father-in-law of the plaintiff, and the usual close ties in such relationship exists in this case, where it appears the jury box was filled before the cause of action arose, that the commissioner did not have the case in mind when drawing the jury and no objection was made to his participating in drawing it. Duty of litigant in respect to drawing jurors in cases where he is related to a jury commissioner stated.

*State* v. *McQuaige, 5* S. C., 429, *distinguished from this case.*

Before SEASE, J., Florence, November term, 1910. Affirmed.

Action by S. L. Humphrey against Geo. G. Palmer and J. S. Palmer.   Defendant, Geo. G. Palmer, appeals.

*Messrs. Willcox & Willcox* and *Lucian W. McLemore,* for appellant, cite: 5 S. C. 429; 39 S. C. 400; 12 Ency. P. & P. 285; 73 S. C. 199; 12 S. C. 89.

*Mr. J. W. Ragsdale,* contra, cites: 10 S. & W. 334; 34 S. C. 30; 73 S. C. 200; 16 S. C. 459; 36 S. C. 507; 65 S. C. 244.

July 31, 1911.   The opinion of the Court was delivered by

Mr. Justice Woods.   When this action of damages for assault and battery was called for trial, defendants' counsel, in the form of a challenge to the array of petit jurors, objected to trial of the case before the jury on the ground of the relationship and close personal association between the plaintiff and Charles T. Haynie, treasurer of Florence county, who as one of the jury commissioners had participated in the drawing of the jury.   The Court took evidence on the point from which it appeared that Haynie was the son-in-law of the plaintiff; that his wife, who was the only child of the plaintiff, was dead and that her children, as the grandchildren of the plaintiff, would in case of his dying intestate inherit his property; and that the intimacy which usually flows from such a relationship existed between the plaintiff and Haynie.   Haynie testified that he knew of the pendency of the action, but did not regard it or even have it in mind when he participated in the drawing of the jury. The Court refused to sustain the objection to the jury, taking the precaution, however, to examine each juror on his *voir dire.*

The general rule on the subject is thus stated in *State* v. *Perry,* 73 S. C. 199, 53 S. E. 169: "The correct rule is that the consanguinity or affinity must be such as would reason-

ably lead to the presumption that the jury commissioner would thereby be affected in such manner as to impair the proper discharge of his duties, and this fact must be determined by the presiding Judge in the exercise of a sound discretion.    It would tend to retard the trial of cases very much to adopt any other rule." This does not mean that the discretion of the Circuit Judge is absolute without respect to the closeness of the relationship.    In the case under consideration if the decision of the Circuit Court depended on an opinion of the Circuit Judge that the close relationship here shown was not sufficient to lead to the presumption that the jury commissioner would be affected by it in selecting the names of jurors to be placed in the box, we think this Court would be obliged to hold that there had been an abuse of discretion.

But in the recent case of *State* v. *Smith*, 89 S. C., 159, the Court said: "It may be well to remark that the trial Judge in exercising his discretion is not restricted to the consideration of the degree of relationship only.    The Court may inquire whether the case had arisen and whether the officer knew of its pendency when the jury was drawn. These and other pertinent inquiries in addition to the fact of relationship may well enter into the exercise of the discretion of the Court."    In this case there are other facts besides the degree of relationship which must be looked at in the light of the statute law on the subject in considering whether there was an abuse of discretion.

The important fact is to be first considered that the names in the jury box had been selected and placed therein written on folded slips in December, 1909, under the statute which so requires; whereas, the cause of action did not arise until September, 1910.    It was therefore impossible that the names in the box could have been chosen with any view to this case; and there could be no abuse of discretion in holding that the defendant could not have been prejudiced by the

participation of Haynie in selecting the names and placing them in the jury box.

The following provisions of the statute safeguard the box after it is made up against the corruption or misconduct or partiality of any one or two of the jury commissioners: "That of the list so prepared, the county auditor, county treasurer and clerk of the Court of Common Pleas, shall cause the names to be written, each on a separate paper or ballot, so as to resemble each other as much as possible and so folded that the name written thereon shall not be visible on the outside, and shall place them, with the said list, in a strong and substantial box, without apertures or openings when closed (to be known as the "Jury Box"), to be furnished to them by the county supervisor of their county for that purpose, and of such size and shape as that, when such separate papers or ballots shall have been folded and placed therein as above required, they may be easily shaken up and about and well mixed therein, and it shall be the duty of the clerk of the court to keep such box in his custody. The said jury box shall be kept securely locked with three separate and strong locks, each lock being different and distinct from the other two and requiring one key peculiar to itself in order to be unlocked and the key to one of said three locks shall be kept by the county auditor himself, the key to another of said three locks by the county treasurer himself, and the key to the third of said three locks by the clerk of the Court of Common Pleas himself, so that no two of them shall keep a similar key or similar keys to the same lock, and so that all three of them must be present together at the same time and place in order to lock or unlock and open said jury box." A. A. 1902, 23 Stat. 1066.

In directing the drawing of jurors to serve at any term of the Court, the act by section 4 confers on the jury commissioners no right of *selection,* but does confer the discretion to *reject* in these words: "If there shall be drawn from said jury box a ballot containing the name of any person not

between the ages of twenty-one and sixty-five years, or not of good moral character, or who has died, or who has removed from the county or is otherwise disqualified to serve as a juror, such ballot shall be destroyed and such name struck from the said list and another ballot drawn."

But the act also contains in section 6 the following very important provision as to the publicity of the drawing of the jury: "That the said drawing shall be made openly and publicly in the office of the clerk of the Court of Common Pleas, and the county auditor, the county treasurer and the clerk of the Court of Common Pleas shall give ten days' notice of each of said drawings by posting in a conspicuous place on the courthouse door, or by advertisement in a county newspaper, a notice of the place, day and hour of such drawing: *Provided,* That in case any term of Court is to be held within less than twenty days after the approval of this act, such jurors may, nevertheless, be drawn without such notice."

No provision similar to this was contained in the acts under which it was decided in the case of *State* v. *McQuaige,* 5 S. C. 429, that an objection to the jury on similar grounds should be sustained. Under the law as it then stood there was no way for a litigant or any person interested as one of the general public in the purity of the jury box to ascertain whether the jury commissioners in drawing the names from the box had in fact exercised any right of rejection of any juror drawn. The statutory requirement of publicity now in force in giving everybody the opportunity to be present at the drawing of the names from the box imposes upon interested parties the obligation to avail themselves of the protection which the public drawing affords. The actual drawing from the box under the contrivances of the statute is entirely mechanical except for the discretion lodged in the commissioners to reject or select a name after it is drawn. Anyone present at the drawing could discover whether it was in fact mechanical, and also whether the commissioners actually exercised the discretion to reject any name. If a

commissioner within the close relationship from which partiality is presumed should participate in the exercise of any act of discretion in rejecting or accepting a name drawn from the box, then there would be cause of complaint and ground of objection to the jury, but not otherwise. And if the parties litigant had no right to be present and ascertain the facts, the Court might well presume without proof that the commissioners did exercise the discretion of rejecting or accepting names. But when the party complaining knows of an objectionable relationship of one of the commissioners and has the right to be present and inspect the drawing, it is his duty to avail himself of the right by attending at the drawing and objecting to the participation of such commissioner. If his objection be disregarded then it is his duty to show to the Court that fact, and the fact that the commissioner objected to acted with the other commissioners in exercising the discretion of rejecting or accepting a name drawn out or in some way influencing the result of the drawing.

Applying the rule laid down in *Jeffers* v. *Jeffers*, 89 S. C., 244, it would seem to follow that it is the further duty of litigants to use reasonable diligence to ascertain before the drawing whether one of the commissioners is related to the parties in interest, so that he may be present at the drawing and protect his rights.

The publicity statute should be given full force as a law made not only to secure the purity of the jury box, but to enable parties to ascertain any facts which would give ground of complaint against the fairness of the drawing, and make them plain to the Court.

Summarizing the considerations entering into the exercise of judicial discretion, we think it is clear that there was no abuse of discretion in refusing to hold the jury not a legal one for the trial of this case. The objection on account of the relationship to one of the parties was not to the making up of the jury list or placing it in the box, but to the draw-

ing only; the defendant had a right to be present at the drawing and object to Haynie's participation, and then ascertain whether the board of which he was a member exercised the discretion of accepting or rejecting any name drawn, or only performed the mechanical function of drawing the names from the box; and no evidence of objection to Haynie's participation or of the exercise of any discretion to reject or accept was furnished to the Court.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.