15417

STATE v. SMITH

(20 S. E. (2d), 726)

*Mr. W. B. Norton* and *Mr. W. B. Norton, Jr.,* both of Marion, and *Mr. W. L. Harrelson,* of Mullins, Counsel for Appellant,

*Solicitor J. Reuben Long,* of Conway, and *Mr. P. H. McEachin,* of Florence, appeared for the State, respondent.

May 28, 1942.

The Opinion of the Court was delivered by Circuit Judge E. H. HENDERSON, ACTING ASSOCIATE JUSTICE:

The defendant, Hugh G. Smith, was charged with the murder of his wife, Mary Smith, and was tried at the fall, 1941, term of the Court of General Sessions for Marion County. He was convicted of manslaughter, and was sentenced to fifteen years' imprisonment.

He lived about two miles from the Town of Marion, and in a neighboring house, about one hundred yards away, Mr. and Mrs. Ashley Hinson resided.

A short time before the killing, the defendant and his wife had become estranged, and she had moved to the nearby home of a daughter. On the night of December 31, 1940, she engaged a taxicab and was driven to Mullins, about seven miles away. There she first went to the home of Mrs. Woodrow Davis, who is a sister of Mrs. Hinson. After talking with Mrs. Davis she proceeded in the taxicab to Martin's Hospital, inquired for her husband, and found that he was not there.

She then sought two policemen on the street and had a conversation with them, asking them to go with her to the Davis house. She said that her husband was there and that she wanted him. They refused to go with her on the ground that it was a family affair. Mrs. Smith stated to them that she would get her husband if she had to kill him and drag him out.

Returning to the home of Mrs. Davis, looking for Mrs. Hinson, she proceeded to make a very thorough search of

the house, behind the doors and into the living room, the dining room and the bath room. Not finding anyone there, she left word with Mrs. Davis to tell Mrs. Hinson "that if she was not slick she would get her before the night was over." She then left Mullins in the taxicab, and drove the several miles to the home of Mrs. Hinson, arriving there about 8:30 o'clock.

Mrs. Smith got out of the automobile and entered the Hinson residence without knocking. The driver of the car stopped near the house and waited. In a few minutes he heard the voices of women talking loudly, then a woman screaming. He did not see any other person enter the dwelling, though he could have seen if anyone had come. When the screaming began he started his automobile, and when he had driven about sixty yards he heard three shots fired.

The Hinson house was dark when Mrs. Smith entered it. Mr. Hinson was away, at his work at the veneer mill at Marion. His six-year-old child had gone to a filling station to get a Coca-Cola.

Mrs. Hinson, who was twenty-nine years old, testified that she was at her home on the night of December 31, 1940. Her husband had gone to work about five o'clock. She was sitting before the fire, which had burned down to coals or embers. There was no light burning. The shades were drawn. A car drove up in front of the house and Mrs. Smith walked in and said that her husband was there. Mrs. Hinson denied this, and invited Mrs. Smith to search the house. Mrs. Smith went into the bedroom and looked under the bed, finding no one there. She then looked in the kitchen and returned to the dining room, the witness stated, where she grabbed Mrs. Hinson and threw her across a chair, striking and kicking her. Mrs. Hinson screamed. In a minute or two, she said, someone rushed in the front door, caught her by the arm and threw her back, and then the pistol fired. She ran out of the house.

The defendant testified that he was thirty-nine years old. That on the evening of December 31, 1940, he was at a tenant house near his dwelling, and the man living there had prepared some supper for him. The defendant had been drinking for several days, though not much that afternoon, and after supper he sat in a chair and dropped off to sleep. After a time, he testified, he waked up and heard some one screaming; he went out in the yard and could tell that the sound came from the Hinson house. He went back into the tenant house to get a pistol which he had bought three days before, and walked fast over to the Hinson residence. He saw an automobile drive away just before he went into the house, he said. He opened the door, and heard scuffling in the dark room. He reached and seized a woman and pulled her to one side. He received a blow beside his head, he stated, and started to shoot.

Mrs. Smith was shot three times, two bullets striking her over the heart, and one in the left side just below the ribs.

After being arrested the defendant confessed to the sheriff and his deputy that he had shot his wife three times, and, according to the officers, said that it seemed as if she would never fall.

The defense contended that Mr. Smith was acting in defense of himself and in defense of Mrs. Hinson. The contention of the State was that Mr. Smith and Mrs. Hinson were alone together in the house, when the defendant's wife unexpectedly arrived, and that the shooting then occurred.

Before the trial began the defendant moved for a continuance of the case on account of the absence of two witnesses, Policemen Byrd and Thompson, the officers with whom Mrs. Smith had talked not long before the killing. The witness Byrd later appeared at the trial, and was fully examined by defendant's counsel. The Court required the defendant to comply with Rule 27 of the Circuit Court by setting forth the facts he believed the witness Thompson would testify to, if present. The statement was prepared,

and the trial Judge stated that he would grant a continuance unless the solicitor accepted it, with certain portions deleted by the Court as being incompetent. The solicitor made no objection to the use of the statement in evidence, and Judge Sease overruled the motion for a continuance.

The defendant did not later offer to read the statement to the jury. During the course of the trial, after the testimony of the witness Byrd was completed, the solicitor stated that he would be very glad to have the testimony of the other officer read. Defendant's counsel then said that since they had one witness whose testimony was practically identical, they did not care to offer the Thompson statement.

A motion for a continuance on the ground of the absence of a witness is addressed to the sound discretion of the trial Judge, and this Court will not disturb the Judge's ruling unless an abuse of discretion is shown. *State v. Johnson,* 196 S. C., 497, 14 S. E. (2d), 24.

We think that the discretion of the Circuit Judge was wisely exercised in this instance.

The defendant thereupon moved that the jury panel be quashed, upon the ground that the venire had been illegally drawn, in that ten days' public notice of the time and place of the drawing of the venire had not been given; that the jury box was not locked securely by three locks with three separate keys, one held by each of the jury commissioners; and that the proper jury commission did not participate in the drawing of the extra venire.

No affidavits were offered in substantiation of these claims.

After the making of the motion the following occurred:

"The Court: That is your motion?

"Mr. Norton, Jr.: Yes, sir.

"The Court: Anything else?

"Mr. Norton, Jr.: No, sir."

The Court then overruled the motion on the ground that it was not borne out by any evidence, and that the allegations had not been proven.

The grounds relating to the three locks and keys, and to the proper jury commission, were not argued by the appellant in his brief. They were apparently based, however, upon the fact that the County Superintendent of Education took part in the drawing of the jury in place of the County Auditor. This is clearly permitted by Section 622 of the Code, which provides that if any one of the regular commissioners is "unable to serve for any cause, the county superintendent of education shall act in his place and stead." There was nothing before the Court to show that the superintendent of education did not have the auditor's key. *State v. Smith,* 77 S. C., 248, 57 S. E., 868.

The real question, then, relates to the giving of the public notice ten days before the drawing of the jury.

When he passed upon the motion, the Circuit Judge was correct in refusing it. No proof whatever had been offered that the notice had not been published, although the burden of showing this was upon the defendant. *State v. Toland,* 36 S. C., 515, 15 S. E., 599; 35 C. J., 379.

After the trial Judge had heard the motion, after it had been stated that there was nothing else, and after the ruling of the Court had been made, the defendant's attorney said: "If your Honor pleases, the Clerk of Court is in court." To this Judge Sease responded that he had asked if there was anything else and that counsel had said "No". In the fourth exception the defendant now contends that the Court refused to permit him to swear the Clerk of Court in support of his motion.

We think that the defendant, if he desired to have the Clerk of Court testify as to a failure to publish the notice, should have offered him as a witness before Judge Sease made his ruling. It is confided largely to the presiding Judge to govern the conduct of the trial. The defendant did not formally or in so many words offer the

Clerk as a witness, or ask that he be sworn, though it is true that the natural inference is that such was his desire.

Assuming, then, that the defendant should have been allowed to examine the Clerk, while it is altogether uncertain what his testimony would have been, the most he could have testified to was, that the ten days' public notice of the drawing of the jury had not been given. Is the failure to publish the notice such a fundamental defect as to require the quashing of the venire, or is it an irregularity in a case where a public drawing was actually had and where the defendant has suffered no prejudice through lack of notice?

In the case of *State v. Rasor*, 168 S. C., 221, 167 S. E., 396, 401, 86 A. L. R., 1237, it was said: "Our court has been liberal in holding that the provisions as to the drawing and summoning of jurors are usually directory only and not mandatory. *Hutto v. [Southern] Railway Company*, 75 S. C., 295, 55 S. E., 445; *Rhodes v. [Southern] Railway*, 68 S. C., 494, 47 S. E., 689; *State v. Smalls*, 73 S. C., 516, 53 S. E., 976; *State v. Smith*, 77 S. C., 248, 57 S. E., 868. Irregularities in the listing, drawing, and summoning of jurors may be often waived, and, even if not waived, are not in themselves acts so prejudicial as to require the quashing of a venire or to warrant the court in setting aside a judgment based upon a finding or verdict of a jury irregularly drawn."

It was stated in the case of *State v. Smith*, 77 S. C., 248, 57 S. E., 868, 869: "Statutes which prescribe the time and manner of drawing jurors are directory, and a venire will not be quashed for mere irregularities."

Other cases with similar holdings are *State v. Wells*, 162 S. C., 509, 161 S. E., 177; and *State v. Washington*, 82 S. C., 341, 64 S. E., 386. Also 35 C. J., 279.

The defendant has not shown, or attempted to show, that he was prejudiced. There is no showing that the drawing was not held at the proper time and place and in a public

manner; there is no showing that the defendant or his counsel desired to or would have been present at the drawing; nor that the jurors drawn were not duly qualified in every respect. *State v. Nelson,* 80 S. C., 373, 61 S. E., 897; *Humphrey v. Palmer,* 89 S. C., 401, 71 S. E., 977.

Trial by jury is one of our most valued rights, and it is of the highest importance that the purity of the jury box should be preserved. In this case we think that the defendant was accorded all of his fundamental rights in this respect. The drawing apparently was a public one, held at the proper time and place, and regularly conducted by the proper officers. Any irregularity has not affected the right of the defendant to a trial by a fair and impartial jury, nor prejudiced him in any way.

Of course, the Clerk of Court may have testified that the notice was duly published; but, even if his testimony would have been that it was not published, the defendant has not been injured by the fact that he did not testify. We think that the Circuit Judge was correct in refusing to quash the venire.

The next group of exceptions raise the point that there was error in excluding testimony as to statements made by Mrs. Smith, the deceased, on the evening of the homicide. The defendant contends that such testimony was relevant to show the animus of the deceased shortly before the killing, that it was competent on the defendant's plea of self-defense, and that it was a part of the *res gestae.* The declarations which were excluded by the Circuit Judge were made to Policeman Thompson, to the driver of the taxicab, and to Mrs. Woodrow Davis.

In the case of *State v. Bigham,* 133 S. C., 491, 131 S. E., 603, 605, it was said: "The statements of the deceased, and declarations made by him, are not competent evidence either for or against the accused, unless made in his presence or unless they are admitted in evidence as part of *res gestae* or dying declarations or proved by the defendant as threats against him."

These declarations were not made in the presence of the accused, they were not dying declarations, and they contained no threats. The question then is: Were they part of the *res gestae*?

"The general rule is that the declarations must be substantially contemporaneous with the litigated transaction, and be the instinctive, spontaneous utterances of the mind while under the active, immediate influences of the transaction; the circumstances precluding the idea that the utterances are the result of reflection or design to make false or self-serving declarations." *State v. McDaniel,* 68 S. C., 304, 47 S. E., 384, 386, 102 Am. St. Rep., 661.

"To make declarations a part of the *res gestae,* they must be contemporaneous with the main fact, not, however, precisely concurrent in point of time. If they spring out of the transaction, elucidate it, and are made at a time so near to it as reasonably to preclude the idea of deliberate design, they are then to be regarded as contemporaneous." *State v. Belcher,* 13 S. C., 459.

Viewed in the light of these principles, we do not think that the declarations of Mrs. Smith were parts of the *res gestae*. One of the statements was made to the cab driver at the time she first left the place where she was staying, at the beginning of her trip, before going to · Mullins. The others were made while she was in the Town of Mullins, about seven miles from the scene of the killing. The several statements were made at different times during the period extending from thirty minutes to an hour and a half before the homicide.

The determination of · whether testimony constitutes a part of the *res gestae* rests largely in the discretion of the trial Judge. *State v. Dickerson,* 179 S. C., 239, 184 S. E., 585.

The Court admitted every bit of competent evidence bearing upon the actions and statements of Mrs. Smith. He properly excluded the declarations in question which were hearsay.

In the eighth exception the defendant claims that one ∎ of the declarations contained a threat against Mrs. Hinson, and that it was admissible to establish the plea of defense of another. This was a declaration of Mrs. Smith to Mrs. Woodrow Davis, who related it as follows: "She asked me if Mrs. Hinson was in my house. I told her she was not. She said 'Can you tell me where she is.' I said 'No, I can't.' She said 'Someone told me she was going to spend the night with her mother, has she gone?' I said 'I don't know.' She said 'You had better tell me where she is.' I said 'I don't know because I haven't seen her today.'"

We do not think that this was a threat, or a declaration of an intention to injure Mrs. Hinson.

It is urged by the appellant that the trial Judge was. in error in allowing the solicitor to examine and cross examine the defendant at great length as to the details of a previous difficulty between him and his deceased wife.

The rule is well settled that the admission of testi- ∎ mony showing the fact of a previous difficulty is proper; the details of such difficulty are inadmissible in evidence. *State v. Abercrombie,* 130 S. C., 358, 126 S. E., 142; *State v. Kennedy,* 143 S. C., 318, 141 S. E., 559; *State v. McGee,* 185 S. C., 184, 193 S. E., 303.

The first question asked by the solicitor along this ∎ line was whether the defendant had killed his wife with the same pistol he had shot her with a night or two before the killing. This was objected to by the defendant, and his Honor properly overruled the objection, holding that evidence of the fact of a previous difficulty was admissible. We do not think that the other questions asked by the solicitor may be regarded as going into the details. It was only brought out that the defendant, on the night before the homicide, had shot his wife in the heel. The defendant did not renew his objection to any of these other questions, and at no time raised the point that the details were involved.

On re-direct examination, the defendant's counsel was permitted, without objection by the State, to go fully into the details. The defendant testified that on the night before the killing he saw a man coming out of the house where his wife was living; that defendant went into the house and discussed the matter with her, "and she started squabbling about it and I pulled out the pistol and shot in the floor and the bullet glanced and hit her in the heel." He said that he did not shoot at her, and that it was accidental. He also stated that on the next day apparently after a reconciliation, he took her to the doctor and had her foot treated.

We think that the details of the difficulty were brought out by the defendant, rather than by the State, and that there was no error in the Court's ruling.

Two exceptions allege error in refusing to permit Dr. D. E. Mitchie, who treated the foot wound of Mrs. Smith on the morning of December 31, 1940, and in refusing to permit Policeman Byrd, to relate declarations made by Mrs. Smith to them as to the manner in which she had been shot in the heel. The defendant contends that such testimony was admissible to explain the previous difficulty with her husband, to show a reconciliation, and to refute the charge of malice.

The rule excluding the details of a previous difficulty applies to testimony offered by the defendant, as well as to that offered by the State. *State v. Adams,* 68 S. C., 421, 47 S. E., 676.

Even if it were proper for the defendant to offer testimony as to the details of the previous difficulty, that evidence should be such as is admissible under the recognized rules. Such facts could not be proved by hearsay evidence, as this clearly was. Mrs. Smith, of course, was not sworn or cross examined. If she were living this testimony would be inadmissible, as hearsay. Such being the case, it is not rendered competent by the mere fact that she had died since the declarations were made. 31 C. J. S., Evi-

dence, § 205, p. 942. Her statements here, just as were those involved in exceptions already discussed, were not made in the presence of her husband, the accused, they were not dying declarations, they were not parts of the *res gestae,* and they did not contain threats.

The evidence was not admissible on the theory that it was in reply to testimony as to the details of the difficulty brought out by the State, because, as we have seen, the State did not go into the details.

The defendant was permitted to show by Dr. Mitchie that on the morning of the day of the killing Mrs. Smith appeared to be in a good humor, and by the nurse at the hospital that her husband was there with her, assisting her in obtaining treatment for her foot, and that they were pleasant in their manner; as well as all other testimony offered along this line, except the hearsay evidence of Mrs. Smith.

In fact the State withdrew its objection to the testimony in so far as Dr. Mitchie was concerned, but the defendant's counsel stated that he would not put in the evidence of the doctor unless he could also introduce that of Mr. Byrd, and admitted that the testimony of the officer was substantially the same as that of Dr. Mitchie.

In our opinion the testimony was properly excluded.

The next exception relates to the method of charging the jury of the requests of the defendant.

The remarks of the trial Judge, in submitting to the jury these requests for instruction, were as follows: "Now, counsel representing the defendant, have asked me to charge you various propositions of law, all of which I charge and the stenographer will please read the requests to save my strength. I charge them all; pay attention to them, gentlemen, the same as if it were my voice."

The stenographer thereupon read the requests to the jury.

The defendant contends that the failure of the Court to declare the law, as required by the Constitution, destroyed

the effectiveness of the propositions of law contained in the requests.

Article 5, Section 26, of the Constitution provides ■ that the Judges "shall declare the law." Parties, of course, have the right to present requests for instructions. The manner and time for doing so is covered by Rule 11 of the Circuit Court. If a request for an instruction is approved by the trial Judge and included in the charge, it becomes the instruction of the Court and as much a part of the charge as any other portion of it. In our opinion a Circuit Judge should read the requests, himself, if adopted as a part of the charge. If it is proper for the stenographer to read the requests, it would be just as proper for him to be given the duty of reading some other portion of the charge, or indeed, the entire charge.

We think that the defendant had the right, at the ■ 'time, to object to the reading of the approved requests, by the stenographer, and to ask that they be read and charged by the Judge personally. In this case, however, the defendant made no such objection, and failed to call the matter to the attention of the Judge in any way. We think that the defendant must be held to have waived his rights in this instance. He should not be permitted to sit without objection at the trial, and then raise the point for the first time upon the appeal. A defendant in a criminal case may waive, in certain instances, his rights with reference to the charge. *State v. Adams,* 68 S. C., 421, 47 S. E., 676; *State v. Wardlaw,* 153 S. C., 175, 150 S. E., 614.

Furthermore, if the Court in his general charge had ■ ■ covered the propositions of law contained in the requests, he would not have been required to read the requests at all. It is not claimed in the exception that the requests contained propositions which the Judge had not already fully covered, but the sole question is as to whether or not it was error in having some one else read them. Neither the charge as a whole, nor the requests are printed

in the record, and we have no way of determining that the Court had not covered these points in his general charge.

We think that the exception should be overruled.

The last exception is that the sentence was excessive. The sentence of fifteen years imprisonment was well within the discretionary limits for persons convicted of manslaughter. The verdict established the fact that the killing was an unlawful one, and that it was not done in self-defense or in the defense of another. We are convinced that the sentence was not excessive, but that it was imposed in the proper exercise of the discretion which must necessarily rest to a large extent in the trial Judge.

All of the exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES, and CIRCUIT JUDGE PHILIP H. STOLL, ACTING ASSOCIATE JUSTICE, concur.