19931

The STATE, Respondent, v. Joseph A. ROGERS, Appellant

(210 S. E. (2d) 604)

*H. F. Partee, Esq.,* of Greenville, *for Appellant,*

*Daniel R. McLeod, Atty. Gen., C. Tolbert Goolsby, Jr., Dep. Atty. Gen.,* and *Sidney S. Riggs, III, Staff Atty.,* and *Thomas W. Greene, Sol.,* of Greenville, *for Respondent,*

December 16, 1974.

NESS, Acting Associate Justice:

This is an appeal by the appellant from a rape conviction of a thirteen year old girl. At approximately four o'clock p. m. on September 8, 1973, the prosecuting witness began

walking to her home from the home of a schoolfriend with whom she had spent the night. After crossing the highway and starting down the road on which she lived, she was stopped by a man driving a light blue car, who had previously passed by her on two occasions, and who identified himself as being from the sheriff's office. He told her he was going to have to take her to the police station to see a lieutenant and asked her to get in the car. When she began crying, he grabbed her arm, placed her in the back seat, and locked the door. He proceeded to a road which ended in a wooded area upon the pretense of finding some boys whom he was going to have to arrest. Whereupon he forced her into the woods and made her disrobe, and raped her. He then placed her in the front seat of the car and let her out on the road on which she lived, where she was found by a neighbor.

After relating the incident to her mother, the police came and the prosecutrix described in minute detail her attacker and the car he was driving. Upon this basis the appellant was thereupon arrested and taken to the sheriff's department where in a showup through a one way mirror he was identified by his victim. The following day a lineup was conducted and she again identified the appellant as her attacker.

No attempt was made on the part of the State to introduce testimony relative to either the showup (view through the one way mirror) or the line-up identification. Rather, the State elected to proceed solely upon the in-court identification of appellant by the prosecutrix, the admissibility of which forms the basis for appellant's first assignment of error. He argues that the trial judge erred in permitting her to identify him as the man who raped her because this in-court identification was tainted by the pre-trial identification conducted in violation of his right to counsel and without due process of law. He relies upon the theory of the *Wade-Gilbert-Stovall* cases decided by the United States Supreme Court in 1967.

The trial judge conducted a hearing in the absence of the jury to evaluate the competency of the evidence in accordance with the procedure specified in *State v. Cash,* 257 S. C. 249, 185 S. E. (2d) 525, and held that in view of the totality of the circumstances that there was no likelihood of irreparable misidentification and that the in-court identification was proper. Factors to be considered in making such a determination were listed in *U. S. v. Wade,* 388 U. S. 218, 87 S. Ct. 1926, 1940, 18 L. Ed. (2d) 1149 as (1) the prior opportunity to observe the alleged criminal act; (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description; (3) any identification prior to the lineup of another person; (4) failure to identify the defendant on a prior occasion; and (5) the lapse of time between the alleged act and the line-up identification.

Of course, the State has the burden to establish by clear and convincing evidence that the in-court identification was based upon observations of the appellant other than the show-up or line-up identification. *U. S. v. Wade, supra,* 388 U. S. 240, 87 S. Ct. at 1939.

Even if we assume that the totality of the circumstances surrounding the show-up (one way glass) conducted in this instance reveals a constitutional violation, there is competent evidence of these and additional factors to support the trial judge's finding that the prosecutrix' in-court identification had a source independent of the unconstitutional pre-trial identification. *State v. Williams,* 257 S. C. 257, 185 S. E. (2d) 529; *State v. Singleton,* 258 S. C. 125, 187 S. E. (2d) 518; *State v. McLeod,* 260 S. C. 445, 196 S. E. (2d) 645; *State v. Bell,* 209 S. E. (2d) 890 filed November 12, 1974. In the case of *U. S. v. Terry,* 137 U. S. App. D. C. 267, 422 F. (2d) 704, 709, the prosecutrix gave the police a detailed description of her assailant and this description corresponded in most aspects to the features and characteristics of the defendant. She had seen the

defendant in close proximity for approximately fifteen minutes both on a public street in broad daylight and in a well lighted room and the description which she gave the police was consistent with the description of her attacker. And she had not wavered in her identification at any stage of the proceedings. The court held that the trial court correctly assessed the relevant factors enumerated in *U. S. v. Wade, supra,* and that the showing of independent source was sufficient. In the case of *Coleman v. Alabama,* 399 U. S. 1, 90A S. Ct. 1999 at 2001, 26 L. Ed. (2d) 387 the court held admissible an in-court identification by a witness who had a fleeting but "real good look" at her assailant in the headlights of a passing car. This was considered to be sufficient to permit the in-court identification in spite of how a subsequent lineup was conducted. In the case of *United States ex rel. Rutherford v. Deegan* (2 Cir.), 406 F. (2d) 217 at 220, the prosecuting witness saw the defendant through a one-way mirror. She had previously given a description to the police which tallied perfectly with the defendant except for the change of clothing and shaving.

In the instant case the prosecuting witness testified that she was in her attacker's presence longer than thirty-five or forty minutes. An officer of the Greenville Police Department was the first to arrive at the scene, and she told the officer in exact detail a description of her assailant, which included his age, color of his hair, glasses, missing front teeth, tattoo on arm, and shirt over one pocket of which appeared the word "Joe" and over the other pocket which appeared "Sheriff's Department". She also described the car, stating that the car was light blue in color, had a black interior; brown panel on the dash and that in the trunk of the car there was a blue light which looked like the light that goes on top of police cars and there was a radio in the trunk. She pointed to the radio in the police car and said it was that type of radio. She also stated that the oil can which he used on her in order to accomplish his purpose was in the trunk of the car. Upon a search of the trunk, practically

all of these items were found. The trial judge further held that her identification was the most detailed he had ever heard in a rape case and was corroborated in precise particularity by her mother and the officer to whom she first reported it. All of which was prior to the time when she viewed the defendant through the one-way mirror or in the lineup.

Suffice it to say that the proof here was more than ample; the victim spent a half hour or more in the company of her assailant in broad daylight; made her first identification just a short time after the incident, was highly specific before ever seeing the appellant in custody, and was never inconsistent. *Neil v. Biggers,* 409 U. S. 188, 93 S. Ct. 375, 34 L. Ed. (2d) 401; *Clemons v. United States,* 133 U. S. App. D. C. 27, 408 F. (2d) 1230; *United States v. Follette* (2 Cir.), 428 F. (2d) 912. See cases in 39 A. L. R. (3d) 791.

While the case at bar does not require decision concerning the application of *Mallory* to post-*Wade* identifications, it is appropriate to comment on certain aspects of this problem, particularly in view of discussion by counsel that he could show no direct prejudice, however, he asserted that the exclusionary rule should be applied without exceptions.

Barely a decade after beginning a revolutionary expansion of the constitutional protections afforded the accused, and after first expressing constitutional concern about the dangers involved in eyewitness identifications, the United States Supreme Court, in three recent opinions, have virtually immunized most pretrial identification procedures from constitutional challenge. In the cases of *U. S. v. Ash,* 413 U. S. 300, 93 S. Ct. 2568, 37 L. Ed. (2d) 619; *Neil v. Biggers,* 409 U. S. 188, 93 S. Ct. 375, 34 L. Ed. (2d) 401; and *Kirby v. Illinois,* 406 U. S. 682, 92 S. Ct. 1877, 32 L. Ed. (2d) 411, the court declined to depart from the rationale by imposing a *per se* exclusionary rule upon testimony concerning an identification that took place before the

commencement of any prosecution whatever. The court stated, however, that there may be occasions during the course of criminal investigation when the police do abuse identification procedures.

■ Of course, the due process clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification. *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 18 L. Ed. (2d) 1199; *Foster v. California,* 394 U. S. 440, 89 S. Ct. 1127, 22 L. Ed. (2d) 402. However, when a person has not been formerly charged with a criminal offense, *Stovall* strikes the appropriate constitutional balance between the right of a suspect to be protected from prejudicial procedures and the interest of society in the prompt and purposeful investigation of an unsolved crime.

Although *Stovall* might be read as meaning that a one man showup violates due process unless good reason for the lack of a lineup is shown it has not been so interpreted by the lower courts. Thus, even when this mode of identification has been employed at the police station, the "substantial likelihood of irreparable mis-identification" underlying the due process claim has been found lacking on the basis of other facts, such as here where the witness had ample opportunity to observe the offender at the time of the crime and established her ability to recall his features by explaining the same to the officers in detail as heretofore stated. *United States ex rel. Geralds v. Deegan,* 292 F. Supp. 968 (S. D. N. Y. 1968); *People v. Singletary,* 268 Cal. App. (2d) 41, 73 Cal. Rptr. 855.

In view of this "totality of circumstances surrounding" the confrontation, we find nothing to justify a finding that there was any likelihood of irreparable mis-identification. There was no denial of due process.

The next exception is that the trial judge abused his discretion in refusing the appellant's motion for a continuance,

based upon alleged improper summoning and excusing of members of the jury panel.

A motion for a continuance is addressed to the sound discretion of the trial judge. 7A South Carolina Digest, Criminal Law, Key No. 586, 1151 (1971 Cumulative Supp. 1974).

Even if the instant motion is considered to be something other than for a continuance such as a motion to quash the venire or a challenge to the panel or array, appellant's exception is without merit. The burden is upon one challenging the array, as the moving party, to introduce or to offer strong and convincing evidence in support of his motion, and the failure to prove such contentions is fatal. Such a challenge is without merit where it consists solely of an attorney's statements, unsworn and unsupported by any proof or offer of proof. 47 Am. Jur. (2d), Jury, Section 228; 50 C. J. S., Juries, § 265. Also the objection must go to the whole array not merely to individual persons. 47 Am. Jur. (2d), Jury, Section 229.

In the case of *State v. Wells,* 162 S. C. 509, 161 S. E. 177, we held, "our court has been liberal in holding that the provisions as to the drawing and summoning of jurors are usually directory only and not mandatory." The *Wells* case has been quoted with approval in the case of *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379; *State v. Smith,* 200 S. C. 188, 20 S. E. (2d) 726; and *State v. Rasor,* 168 S. C. 221, 167 S. E. 396.

Appellant's contention is further based upon his assertion that some members of the jury panel were improperly excused from jury duty. The applicable general rule is stated to be in 50 C. J. S., Juries, § 205, "matter of excusing jurors is addressed to the sound discretion of the trial judge, the exercise of which will not be interfered with unless it is clearly shown to have been abused to the actual prejudice of the complaining party * * *". See also 47 Am. Jur. (2d), Jury, Section 120.

We do not believe that appellant has sustained his burden of proving that the trial court improperly excused any member of the jury panel. For example, it has not been demonstrated that any member excused was not otherwise exempt from jury service via the provisions of Section 38-104 of the Code. *State v. Smith*, 200 S. C. 188, 20 S. E. (2d) 726.

Section 38-108 provides that no juror shall be excused except upon affidavit and upon good and sufficient cause shown which shall be filed with the clerk of court and remain on record. While technically here this may be in violation of the statute, nevertheless a full venire is not a prerequisite to the commencement of a criminal proceeding. An accused has no right to insist upon the attendance of all the veniremen directed to be summoned, nor to demand the presence of the maximum number of jurors provided for by statute to be drawn or summoned. 12 South Carolina Digest, Jury, Key No. 80; 47 Am. Jur. (2d), Jury, Section 192; 50 C. J. S., Juries, § 197. Nor is it the general practice to fill the places of jurors who have been excused after summoning and before impanelment any more than it is the practice to fill the places of those who are discharged for cause, so long as there remains sufficient jurors from which to draw a jury. 47 Am. Jur. (2d), Jury, Section 122. In this regard it should be noted that even if both parties in this case had used all of the peremptory challenges accorded them by Section 38-211 of the Code, the panel would not have been exhausted.

In addition to the above the law is well settled that the defendant has no right to a trial by any particular jury or jurors and has the right only to a trial by a competent and impartial jury. 47 Am. Jur. (2d), Jury, Section 27; 50 C. J. S., Juries, § 195, which is precisely what appellant received in the court below.

Finally, the general principle that error must be prejudicial in order to be ground for reversal applies to rulings on excusing a juror. 47 Am. Jur.

(2d), Jury, Section 123. The defendant in the instant case has failed to show any prejudice in view of any challenges used or any claim by the defendant to any other jurors. Appellant also asserts that the venire was to consist of sixty-five jurors, however, cites no authority for this contention. Section 38-61.1(6) provides "notwithstanding the provisions of § 38-61, in the counties of * * * Greenville * * *, the jury commissioners may draw fifty petit jurors." This was a 1964 amendment and we find no further amendments applicable to Greenville County.

Forty-four of these fifty jurors were in court. As heretofore stated a full venire is not a prerequisite to the commencement of a criminal proceeding.

The excusing of a juror by the court of its own motion is not reversible error in favor of the accused, where it does not appear that he did not have a fair and impartial trial by a competent jury, or that the party had exhausted all its challenges, or that by the action of the court the panel was depleted. *Parrett v. State,* 200 Ind. 7, 159 N. E. 755; 47 Am. Jur. (2d), Jury, Section 120, Page 724. We adopt the doctrine that the defendant in a criminal prosecution is not placed in jeopardy until the jury has been sworn is sufficient cause for sustaining the right of the trial court to excuse jurors prior to that time. There is no doubt that after a proper panel is drawn, the court in his discretion, for adequate reason, may excuse some of them before a trial. *State v. Van Duyne,* 43 N. J. 369, 204 A. (2d) 841; 11 A. L. R. (3d) 1097; *State v. Britt,* 237 S. C. 293, 117 S. E. (2d) 379; *State v. Smith,* 200 S. C. 188, 20 S. E. (2d) 726; *State v. Rasor,* 168 S. C. 221, 167 S. E. 396. We are of the opinion that the appellant has failed to show that any of his substantial rights have been affected in any of the instances stated in this exception and any irregularity, if such occurred, did not operate to the prejudice of the de-

fendant. We deem all appellant's exceptions to be without merit and the judgment below is accordingly,

Affirmed.

Moss, C. J., and Lewis, Bussey and Littlejohn, JJ., concur.