Evans J.
delivered the opinion of the Court.
There is no legal principle better established than that a free and voluntary confession is deserving of the highest credit; for it is not to be presumed that one will falsely accuse himself of a crime, especially when he knows that a conviction of it will incur a forfeiture of his life. But it is essential to the admission of such confessions, as evidence against the accused, that they should he freely and voluntarily made. If they are made under the influence of hope or the torture of fear, they are wanting in the great essential of being free and voluntary, and come in too questionable a shape to be considered evidences of guilt. This is the rule of law applicable to all cases. There is no doubt about the rule itself, but the application of it is beset with difficulties. Such is the diversity of the human mind: so much greater is the capacity of some minds to maintain composure under the pressure of adversity, that to determine whether the confessions are free and voluntary, must of necessity depend on a greSt variety of circumstances; such as age» situation, character, and the circumstances under which they were made. No one acts without motive. One man may admit himself to have committed a crime, from a high sentiment of honor, because he will not tell a falsehood; another from motives of penitence and a hope of reconciling himself to his offended maker; whilst the third may be influenced by the hope of some temporal advantage to result to himself. To such confessions no possible objection can arise. In the two first cases, the confessions are the offspring of a virtuous motive, and are therefore true; in the latter, they may be false, but they come from his mind uninfluenced by the operation of external causes. Plow far he shall be protected against the influence of these external causes, by excluding his confessions from the jury, must of necessity be determined in the first instance by the presiding Judge, whose situation best enables him to decide whether the confessions were free and voluntary, or “forced from his mind by the flattery of hope or the torture of fear.” If the inducements held out to the prisoner be made by one having authority over him or over the prosecution, as by the prosecutor, or his wife—if the prisoner be his servant, *157 or by tbe officer having him in custody, or the magistrate, or even by a private person in the presence of one in authority— confessions under such circumstances, it would seem from the authority of decided cases, should be rejected. The power of such persons may well be supposed to animate the prisoner’s hopes of favor on the one hand, and to inspire him with awe on the other, and in some degree to overcome the powers of his mind. (1 Greenleaf Ev., sec. 222.) But where the con. fessions are made on inducements held out by private persons having no authority over the prisoner or the prosecution, there seems to be no satisfactory conclusion to be drawn from the authority of decided cases, so as to lay down any definite rule which can be applied to the almost infinite variety of cases which occur. The same difficulty does not exist where the confessions are made to one in authority. There, it is truej the rule may sometimes fail of meeting the truth on account of the difference in age, experience and self-possession, in the midst of the most trying and difficult position in which man can be placed; yet in general, it has been found to be a wise rule which excludes confessions made to such persons: and as it is always wise to narrow the bounds oí discretion, whenever it is practicable, it has been adopted as a rule. But in the case of confessions made on suggestions of benefits, by private persons having no authority, the difficulty oflaying down amore specific rule than the general one, that the confession must be voluntary, has suggested the idea that the question is a mixed one of law and fact, and that it must be left in a great degree to the Judge to decide under all the circumstances, whether the threats or inducements were such as to overcome the mind of the prisoner. (1 Greenleaf, sec. 223.) That seems to be the result to which the more modern cases lead; and a late writer on the subject has come to the conclusion, that a confession made to a private person under inducements held out by him, are admissible. (Joy, on the Admissibility of Confessions, sec. 2.)
After an attentive consideration of all the facts connected with the prisoner’s confession, I have come to the conclusion that they were properly received. The suggestion of the witness (Kirby) as to the effect of the negro’s confession in esta- *158 Wishing the prisoner’s guilt, although not true, and of the fact that the prisoner was from home when Vance was murdered, were well calculated to alarm him; but the offer of assistance from one having influence and ability to aid him, and the admonition not to confess unless he was guilty, were likely to restore his self-possession and remove his fears. What occurred afterwards seem to be considerations of probable benefits, arising from his confession, which he had already declared his readiness to make, by way of confirming his resolution to confess. He was not hurried precipitately into a confession of his guilt; he was duly warned of the consequences, and a sufficient time allowed for his mind to recover its composure, and to act with calmness and deliberation upon what he was going to do.
Yet, notwithstanding I have come to this conclusion, in which nearly all my brethren concur, yet my mind does not rest with entire satisfaction on the result of the trial. If the case had rested on the confessions alone, (unsupported by the confirmatory facts,) opposed as they were by the proof of alibi made by so many witnesses—although many of them were of bad and doubtful character, the jury might well have paused in coming to the conclusion of guilt. It might have been no strained inference, considering the prisoner’s situation, and the character of those to whom the confession was made, that the hope of placing himself in the favorable position of Dill, whose case was mentioned, and which had occurred in his own district, and was probably known to him, or other benefits which had been presented to his mind, had operated on him to confess that of which he was not guilty. But the greatest difficulty of the prisoner’s case was, to reconcile his innocence with his knowledge of the independent facts proved by other witnesses in confirmation of his statement. How could he know the truth of these facts unless he was present when they occurred? The murder of Vance was so atrocious; the public mind far and near was so agitated by it, that it was no doubt the subject of general conversation, and all the leading facts of the case well known to every one before the prisoner’s arrest; such as that the gun was loaded with slugs, that Vance had been shot *159 from the door opening into the back yard, the firing of the gun the evening before, and the stealing of the gun and tobacco from Reed’s shop. And when it is remembered that both Lee and Kirby were suspected of the crime as well as the negro, it will not be difficult to account for his knowledge of these facts. But there are other facts which could not be well known until after the negro’s confession, such as the firing of the pistol at night, as the signal for meeting. So far as there was any evidence on the point, it did not appear that the prisoner had had any communication with the negro Dave, except in the presence of witnesses. But the negro’s confession was made on Sunday night. Kirby was arrested and brought to jail the next day. In the then state of the public mind, there is little doubt but that the particulars of the confession were spread abroad, if not that night, early the next morning. They were probably known to the officer who arrested the prisoner, and may have been, and probably were, communicated to him. It is pretty clear that he knew the negro’s confession had implicated him, when Major Kirby went to see him in jail. These things occurred at Spartanburg: the importance of them may not have been foreseen by the prisoner; and when on the trial at Laurens their important bearing on the case was discovered, those who might have explained them were not there. The prisoner is poor, unfriended and ignorant. Beset as he was by difficulties growing out of his confession; surrounded not by suspicions only, but by a conviction of his guilt on the public mind, he and his ignorant and humble family were but poorly qualified to make arrangements for his defence. He can hardly be said to have had the benefit of counsel in the preparation of his case. Those who defended him did it gratuitously; two of them had generously undertaken his defence, at the request of the Court, only two days before the trial. Under these circumstances, it was impossible they could have foreseen the vast importance of the prisoner’s accounting for his knowledge of some facts, wholly inconsistent if unexplained, with his innocence. A man who has been thus tried under disadvantage, with the weight of a foregone public opinion against him, *160 deeply but justly excited, by the atrocity of the crime alleged against him, could hardly escape conviction.
The very extraordinary facts disclosed by the trial; the peculiarly unfriended condition of the prisoner; the state of the public mind, arising out of the perpetration of so black and bloody a deed as the murder oí Vance, have all pressed upon me the propriety of giving the prisoner another chance for his life. To doom a human being to death, is no ordinary matter. If on another trial he should be able to exculpate himself from the guilt which his confessions have fastened upon him, every noble and generous mind will rejoice at the result. Should he be again convicted, he cannot complain that he has not had, in full measure, the benefit of all the humane maxims of the law.
The motion for a new trial is granted.
O’Neall J., Wardlaw J., and Withers J.. concurred.