CASE No. 862.

STATE v. BRANHAM.

1. An exception in the words " that the verdict is contrary to the law and the evidence," charges no specific error, and will not be considered.
2. Where an alleged misnomer of the owner's name in an indictment for burglary, has not been objected to in the court below, nor made a ground of appeal, this court cannot consider it.
3. It is not necessary to prove the precise day or year of the commission of the offence as laid in the indictment, except when time enters into the nature of the offence, or is made a part of the description of it.
4. The act of 1866 (13 *Stat.* 405), enlarging the limits within which burglary and arson may be committed, did not repeal burglary at common law; and the act of 1878 (16 *Stat.* 631), increasing the punishment for burglary at common law, did not repeal the act of 1866, (*Gen. Stat., ch. CXXIX.,* § 32,) nor the common law offence.
5. The Circuit judge having permitted evidence of a confession of guilt made by a prisoner to the committing magistrate to go to the jury, this court refused to interfere upon that ground, although the manner of the officer

was rude and his caution to the prisoner not as explicit as it should have been.

6. Where the confessions of a prisoner made to a trial justice at the preliminary examination are reduced to writing and signed by the prisoner, and such written statement is within reach of the court, it is error to admit parol testimony of the confession.

Before WALLACE, J., Richland, July, 1879.

Indictment against Hannibal Branham and March Harris, for burglary. The facts are stated in the opinion of the court.

*Mr. Allen J. Green,* for appellants.

Parol evidence of the confessions were inadmissible, as they had been reduced to writing. *Pressley's Law of Mag.* 208, 209 ; *Roscoe's Cr. Ev., tit. "Confessions ;"* 4 *C. & P.* 548 ; *McNally's Ev.* 45 ; 1 *Leach* 240, 310 ; 1 *Busbee's (N. C.) R.* 239. The confessions, as proved, should not have gone to the jury, the circumstances surrounding them making them inadmissible. *Roscoe's Cr. Ev.* 38, 50 ; 1 *Leach* 263 ; *Whart. Am. Cr. Law,* §§ 687, 695 ; 1 *Strob.* 155 ; 12 *Eng. L. & E.* 583 ; 2 *East P. C.* 648. There is fatal variance between time laid and time proved. Before 1866 there was only burglary at common law, which could be committed only in a dwelling-house. 1 *N. & McC.* 583. The act of 1866 repealed the common law definition, and the punishment of burglary, as thus newly defined, was regulated by act of 1869. 14 *Stat.* 175. Burglary at common law was then revived by act of 1878, which went into effect May 21st, 1878. Time is thus essential here. Statutory burglary being repealed before trial, and common law burglary not re-enacted until after the offence was committed, the judgment must be arrested. 1 *Leach* 306 ; 22 *N. Y.* 95, 155. The verdict is contrary to law and evidence, of which the court will take notice. 11 *S. C.* 319 ; 12 *S. C.* 89. The misnomer is fatal. 2 *Russ. on Cr.* 789, 795 ; 4 *Strob.* 32. Confession of a prisoner is only evidence against himself. 2 *Russ. on Cr.* 864. Confessions show that they were only accessories. 2 *Bish. on Cr. Proc.,* § 9 ; 49 *Me.* 588 ; 2 *Vr.* 65 ; *Gen. Stat.* 742, § 2.

*Mr. Solicitor Abney,* contra.

April 21st, 1880. The opinion of the court was delivered by McGOWAN, A. J. The defendants were convicted upon an indictment for burglary and larceny, at July Term of the court for Richland county, 1879, and sentenced to confinement in the penitentiary at hard labor for the term of six years. The indictment charged that the offence was committed by taking seventeen pieces of bacon from the smoke-house of Nick C. Joiner, February 9th, 1879. The proof was, that the taking was a year before, February, 1878, and the owner of the property was N. G. Joiner. The defendants were arrested April, 1879, and carried before a trial justice, and a preliminary examination was held at Eastover. One of the witnesses for the state was caught by the trial justice in a " crooked tale," and the trial justice spoke angrily to him and threatened " if he did not stop shenanegan and tell the truth, he would send him right up to jail." Defendants were asked what they had to say for themselves, and were told that " if they desired to make a statement it was their privilege to do so, and they were warned that whatever they said would be taken for them or against them, as it might be." Defendants then made confession, each charging the other and one Tempe Brown, with the crime. Harris said he stopped in a low, wet place and Branham and Tempe Brown went to the smokehouse and brought the meat down to him and he helped to carry it off. [A low, wet place is about three hundred and seventy-five yards from the smoke-house. The track of three persons led from the smoke-house to the low, wet place.] Branham said he went with them and stopped under a wagon shed ; that Harris and Brown came to him and told him " the house had been dug under," and to come and get the meat. He said he refused to go and they went and got the meat, and that he helped them to carry it off. These statements were reduced to writing by the trial justice, read over to and signed by the respective defendants and the trial justice, which paper was in court. Parol testimony was received to prove the confessions. [Defendants excepted.] Defendants then moved to strike out the confessions, on the ground that they were improperly obtained, which motion was

refused and defendants excepted. No evidence was introduced on the part of the defence.

Defendants made motions for a new trial and in arrest of judgment, and failing therein appealed to this court on the following grounds:

1. "That the presiding judge erred in receiving parol testimony of the alleged confession of defendants, the rule being when prisoners confess before examining magistrates it is the duty of the latter to take the confessions in writing, and the writing alone is evidence of the confessions, unless it appears that the writing is lost or destroyed.

2. "That his Honor erred in allowing the confessions, the circumstances surrounding the confessions being such as to make them inadmissible.

3. "That there is fatal variance between the allegations of the indictment and the proof, in this: the indictment alleges the offence on February 9th, 1879, and the proof is that the offence was committed February 9th, 1878, and the indictment should have so charged.

4. "That the verdict is contrary to the law and the evidence."

The last exception, that the verdict is "contrary to the law and the evidence," does not charge any specific error, and, therefore, cannot be considered. The sufficiency of the proof to charge the prisoners as principals was properly addressed to the Circuit judge upon a motion for a new trial. The alleged misnomer as to the owner of the property, Nick C. Joiner for N. G. Joiner, does not appear to have been objected to in the court below, or brought to the attention of the judge, either in the pleadings or orally. No reference is made to it in the grounds of appeal, and the matter is not before this court in such form that we can consider it. The other grounds of appeal will be considered in the inverse order in which they are stated.

As to the variance between the indictment and the proof as to the time the offence was committed. No statute of limitations is in the case, but simply a question of pleading. It is not necessary to prove the precise day or even year laid in the indictment, except where time enters into the nature of the offence, or is made part of the description of it. *State* v. *Anderson*, 3 *Rich.* 176; *State* v. *Porter*, 10 *Rich.* 148.

But it is ingeniously argued that as there is a time limited in the act of 1878 (16 *Stat.* 631) to go into effect, to wit, "sixty days from its passage," time becomes essential to an indictment under that act. It does not appear that this indictment is under the act of 1878. It reads, "against the form of the act of the general assembly in such case made and provided, and against the peace and dignity of the state," &c. But no particular act is referred to, and we conclude that it was not under the act of 1878, for the reason that the punishment under that act is "imprisonment during the life of the prisoner," and these defendants were imprisoned only for "six years." We assume that the indictment was under Section 32, Chapter CXXIX., (*Gen. Stat.* 720,) being substantially the re-enactment of the act of 1866. If this indictment were under the act of March 22d, 1878, the judgment would have to be arrested, for the reason that the act was not passed until the offence was committed, February 8th, 1878. The criminal law is so tender of the rights of the citizen that it will not allow him to be tried and punished under a law which was not in existence at the time the offence was committed, especially if the subsequent law increases the punishment. That would be unconstitutional because *ex post facto.*

Accepting this view, it is then argued that the defendants could not be indicted and punished under the aforesaid section of the general statutes, for the reason that the act of 1878, being on the same subject, was a substitute for and a repeal of that law. That the defendants could not be tried and punished under the act of 1878, because it was passed after the offence, nor under the aforesaid section of the general statute, because that was repealed by the act of 1878, and there being no law under which they could be punished, consequently they must go free—as did the defendant convicted for cow-stealing, in the case of *State* v. *Thomas*, 14 *Rich.* 164. We do not think the cases are analogous. In the case of Thomas, as here, the offence was committed before and tried after the change of the law, and there was no authority under which he could be punished, for the reason that it was held that the act of 1866, upon the subject of cow-stealing, operated as a repeal of the act of 1789, upon the same subject. But no such result can happen in this case. The act of 1878

does not operate as a repeal of so much of the aforesaid section
of the statutes as relates to burglary. Nor did the said section
repeal the offence of burglary at common law. The act of
1878 does not expressly repeal anything. It contains no re-
pealing clause, but simply increases the punishment of one con-
victed of "the crime of burglary at common law." That,
itself, is an express legislative declaration that the offence of bur-
glary at common law had not been repealed. If the act of
1878 operates as a repeal, it must be by *implication.* Such re-
peals are possible, but they are not favored. To have that effect
the new law must cover the whole subject exhaustively and be abso-
lutely inconsistent with the old law. Acts upon the same sub-
ject, which can stand together, are construed *in pari materia.* If
they are consistent, they both stand—the last as an amendment.
If part is consistent and part not, the repeal only operates upon
the inconsistent part. *State* v. *Mayor,* 14 *Rich.* 76; *State* v.
*Alexander, Ib.* 247; *Goddard* v. *Boston,* 20 *Pick.* 407; *State* v.
*Corley, ante p.* 1.

The act of 1866, re-enacted in the general statutes, shows, by
its terms, that it is not inconsistent with burglary at common
law, but, on the contrary, assuming its existence, is based upon
it and only supplements it by enlarging the field within which
an analogous statutory offence could be committed. The terms
are : "With respect to the crimes of *burglary and arson,* and to
all criminal offences, which are constituted or aggravated by
being committed in a dwelling-house, any house, &c.,   *   *   *
in which there sleeps a proprietor, &c.,   *   *   *   with a view
to the protection of the property, *shall be deemed a dwelling-house,"*
&c.  13 *Stat.* 405. No repeal of burglary at common law was
intended by this act—none is necessarily involved in its terms
and none can be implied. Nor does the act of 1878 operate as
a repeal, either of burglary at common law or of the additional
statutory offence provided for in the section aforesaid. The latter
it does not touch at all, and only increases the punishment of the
former, in the view, doubtless, that burglary at common law is
more heinous than the statutory offence created by the section
aforesaid. We can discover no error in the judge's charge on
the subject of the third exception.

It was further urged for a new trial that the Circuit judge erred in admitting as evidence the statements of the defendants made at the preliminary examination before the trial justice, upon the ground that they were not voluntary ; that the defendants were ignorant ; that they were without counsel and alarmed by the presence of the officer of the law, who was rude to the witnesses, and were betrayed into making statements which were not true. The rule upon this subject of confessions has been often stated, but no where better than in 2 Russell on Crimes : " The highest authorities have now established that a confession, if clearly made and satisfactorily proved, is sufficient alone to warrant a conviction without any corroborating evidence *aliunde*, but a confession, in order to be admissible, must be free and voluntary. That it must not be extorted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, or by the exertion of any improper influence." The rule requiring that the confessions must be perfectly voluntary, is founded on the great principle of the common law, that the guilt of a prisoner must be discovered by other testimony than his own confession. " *Nemo tenebatur prodere ipsissime.*" It is proper in the administration of the criminal law that the rule should be preserved in all its integrity.

It is especially necessary to guard with jealousy all confessions made by prisoners in arrest in the presence of the officers of the law ; but it is impossible to lay down any rule that will determine every case. As is said in some of our cases, there is no difficulty about the principle itself, but its application is beset with difficulties. In practice, what is and what is not a violation of the principle, must of necessity be left, in the first instance, to be determined by the Circuit judge, whose situation best enables him to decide in each case whether the confessions are voluntary. The judge below, familiar with all the facts, ruled that the confessions were voluntary in this case, and, upon review, refused a motion for a new trial, and it is difficult to say, as matter of law, that he was in error. The manner of the officer was peremptory, but no inducements were held out and there was some corroborating testimony. Some of the earliest cases held that all confessions of one in arrest, made to an officer in authority, were

assumed to be induced and were inadmissible, but that rule, if ever established, has certainly been modified. When the trial justice said to the prisoners that if they desired to make a statement it was their privilege to do so, he should have added it was also their privilege to remain silent, which would have excluded the possible inference that they were bound to speak. We would have been better satisfied if he had so warned them, but we cannot say the confessions were not voluntary. This subject was much discussed in the case of *State* v. *Kirby,* which was twice in the Appeal Court, and is reported in 1 *Strob.* 155, 388. The opinion on the last occasion was delivered by Judge Withers, who, after full consideration, in a capital case announced the law in terms which cover this case. " A confession is admissible," says Mr. Greenleaf in the first volume of his Evidence, Section 239, " though it is elicited by questions, whether put to the prisoner by a magistrate, officer or private person ; and the form of the question is immaterial to its admissibility, though it assumes the prisoner's guilt. In all these cases the evidence may be laid before the jury, however little it may weigh under the circumstances, and however reprehensible may be the mode in which, in some of them, it may be obtained. According to recent decisions by some of the English judges, a knowledge by the prisoner that the government itself has offered a pardon and a reward, will not exclude his confession, unless it appears that it was made under the influence of a hope of pardon held out by authorized parties, and though, when that is urged, the judge may exclude the confession when such influence is manifest, it is unquestionably for the jury when the facts are doubtful." *Regina* v. *Boswell et al.,* 41 *E. C. L. R.* 584; *Regina* v. *Dingby et al.,* 47 *Ib.* 637.

Upon a preliminary examination the accused parties have the right to be present and cross-examine witnesses, but they are not required to make any statement themselves. *Gen. Stat.* 197. It is not the duty of a trial justice to examine accused parties or to take their statements in writing, unless they are sworn as witnesses on behalf of the state by their own consent, and if he does so it is not an official act; but he is not prohibited from doing so, and a respectable authority recommends that the ancient

course of taking such statements should still be pursued. Be that as it may, when confessions are taken by a trial justice, in writing, signed by the parties, such evidence is the best evidence upon the subject, and if such confessions are relied upon against them, the defendants are entitled to have them produced in the very terms in which they were made. From the infirmity of memory there is always more or less uncertainty about parol testimony, especially in reference to declarations—mere spoken words. Even in civil cases the rule is that parol testimony is not admissible to explain, vary or add to written instruments, which must speak for themselves. In criminal proceedings there is even more reason that only the best and most reliable evidence should be allowed. There may have been in the written confessions some qualifications or explanations, and, we think, when demanded by the defendants, they should have been offered. It was error to receive parol testimony of confessions made in writing where there was no obstacle in the way of the written confessions being offered.

The judgment is set aside and a new trial ordered.

WILLARD, C. J., and McIVER, A. J., concurred.