24437

The STATE, Respondent v. Herman Henry "Bud" VON DOHLEN, appellant.

(471 S.E. (2d) 689)

Supreme Court

---

*Joseph L. Savitz, III, Deputy Chief Attorney* and *Robert M. Dudek, Assistant Appellate Defender,* of the *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr.,* Columbia; and *Solicitor David P. Schwacke,* N. Charleston, *for respondent.*

Heard Sept. 19, 1995.

Decided May 28, 1996; Reh. Den. June 21, 1996.

WALLER, Justice:

Appellant Herman Henry "Bud" Von Dohlen was convicted of murder and armed robbery and was sentenced to death. This appeal consolidates his direct appeal with the mandatory review provisions of S.C. Code Ann. § 16-3-25(C) (1985). We affirm.

## FACTS

Von Dohlen was employed at the Quicksilver Pawn Shop in Goose Creek. On May 28, 1990, at approximately 7:45 a.m., he walked next door to the Creek Bank Dry Cleaners for change. The clerk on duty at the cleaners was 21-year-old Margaret McLean (Victim) who, according to Von Dohlen, "smarted off" at him and acted like a "bitch," refusing to give him change. Von Dohlen left the dry cleaners thinking about his brother who had been murdered two weeks earlier. He went back to the pawn shop and retrieved a 30/30 rifle and two .38-caliber shells. He returned to the cleaners, intending to scare the Victim. Von Dohlen told the Victim she had been acting like a bitch to him and that his brother had just died and that she didn't need to live either. In an attempt to make it look like rape, he told the Victim to remove her clothes. She complied and attempted to escape out the back door when the bar bolting the door allegedly fell and hit her in the head. According to Von Dohlen, the gun went off and hit the Victim in the head.[1] When she fell to the floor, he shot her again in the back of the head. Von Dohlen then stole the money from the cash register and returned to the pawn shop.

The murder weapon was subsequently found at the pawn shop, and after taking a polygraph exam, Von Dohlen signed a written confession. A jury convicted Von Dohlen of murder and armed robbery and recommended a sentence of death.

## PRELIMINARY ISSUE

As an initial matter, we must decide whether the abolition of in favorem vitae review in *State v. Torrence*, 305 S.C. 45, 69, 406 S.E. (2d) 315, 328 (1991), applies to this case. In *Torrence*, we held a "contemporaneous objection is necessary in all trials beginning after the date of this opinion to properly preserve errors for out direct appellate review." (Emphasis supplied.) *Torrence* was filed on May 20, 1991, the day Von Dohlen's trial began. Accordingly, he contends *Torrence* is inapplicable and we should therefore conduct an *in favorem vitae* review. We disagree.

---

[1] The autopsy revealed the initial gunshot wound was fatal and was fired at a distance of 4 to 12 inches from the Victim's head, passing first through the Victim's right hand.

Von Dohlen's trial began at 10:00 a.m. on May 20, 1991. A jury venire was called and a number of jurors were excused or disqualified. The solicitor then advised the court of the *Torrence* opinion abolishing *in favorem vitae* review. Thereafter, *voir dire* was conducted and a jury impaneled.

On the present record, it is patent that Von Dohlen and his attorneys were notified of *Torrence* prior to a jury being selected. The purpose of our holding *Torrence* applicable to trials beginning after its publication date was to ensure proper notice of the abolition of *in favorem vitae* review. At the record reflects Von Dohlen was put on notice of *Torrence,* we decline to extend *in favorem vitae* review in this case.

Moreover, it is clear from Justice Toal's concurring opinion in *Torrence* that *in favorem vitae* review is not statutorily mandated. 305 S.C. at 67-68, 406 S.E. (2d) at 327-328. It is likewise not constitutionally mandated. *See Griffin v. State,* 315 S.C. 285, 433 S.E. (2d) 862 (1993), *cert. denied,* — U.S. —, 114 S.Ct. 924, 127 L.Ed. (2d) 217 (1994) (no *ex post facto* violation in mere procedural change in law); *Hyder v. Jones,* 271 S.C. 85, 245 S.E. (2d) 123 (1978) (changes affecting remedy or procedure are outside the presumption of prospective application); *State v. Rogers,* 263 S.C. 373, 210 S.E. (2d) 604 (1974) (double jeopardy does not attach until jury is sworn.) Accordingly, as Von Dohlen was made aware of our *Torrence* opinion prior to the jury being impaneled, we decline to extend *in favorem vitae* review in this case.

## ISSUES
1. Did the Solicitor's office withhold *Brady*[2] information?
2. Was *voir dire* of the jury panel proper?
3. Was Von Dohlen's statement to police involuntary?
4. Should Von Dohlen's statement to his employer, Magistrate Altman, have been suppressed?
5. Was testimony that the Victim's father wanted a death sentence improper?
6. Was the trial court's reasonable doubt charge erroneous?
7. Was the court's malice charge improper?
8. Was expert testimony the Victim's injuries were "extremely painful" improper?

---

[2] *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963).

9. Was a postmortem photograph of the Victim improperly admitted?

10. Is the death sentence disproportionate to the crime in this case?

## 1. *BRADY* VIOLATION

Subsequent to institution of this appeal, we remanded ■ to determine whether the State had improperly withheld *Brady* material. The circuit court ruled there was no *Brady* violation. We agree.

Von Dohlen's claim of a *Brady* violation stems from his employment for Magistrate Ronald Altman at the Quick Silver Pawn Shop.[3] The Department of Consumer Affairs requires fingerprint verification forms on all pawn shop employees.[4] After the murder in this case, Consumer Affairs realized it had no employee verification on Von Dohlen the prior year. The form submitted was dated 1989 but had an indication it was signed in 1990. Consumer Affairs concluded the form had been altered or falsified and was not in existence the prior year. It then filed a Petition to Revoke Quick Silver's Pawnbroker License for, *inter alia*, the failure to file the required employee fingerprint verification. To avoid a potential fine of $15,000, Quick Silver signed a "consent order of relinquishment" of its pawnbroker's license. The consent order makes no findings of forgery or alteration, nor does it mention Magistrate Altman.

Von Dohlen contends the State withheld its knowledge of Altman's alleged "forgery" of document in violation of *Brady*. We disagree.

We find no basis upon which to impute Consumer Af- ■ fairs' suspicion to the solicitor's office. Although information known to investigative or prosecutorial agencies may, under certain circumstances, be imputable to the State, *see United States v. Auten*, 632 F. (2d) 478 (5th Cir. 1980) (holding criminal records and convictions of its witnesses are imputable to government), the government has no "affirmative duty to take action to discover information which it does not possess. . . . The prosecutor has no duty to under-

---

[3] Magistrate Altman's wife, Lottie, was the record owner of the pawn shop.

[4] The agency regulates pawn shops and ensures that convicted felons are not employed therein.

take a fishing expedition . . . in an effort to find impeaching evidence." *United States v. Jones,* 34 F. (3d) 596, 599 (8th Cir. 1994). Those cases which find such knowledge imputable to the prosecutor involve prior convictions and/or pending charges against a witness.[5] In contrast, the allegedly impeaching evidence in this case is Consumer Affairs' suspicion of possible alteration of documents, by an unknown individual, on which charges were never filed. We hold this information was not imputable to the solicitor's office.

In any event, even assuming the matter were imputable to the State, we find no *Brady* violation. *Brady* requires the State to disclose evidence in its possession favorable to the accused and material to guilt or punishment. *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed. (2d) 40 (1987); *Clark v. State,* 315 S.C. 385, 434 S.E. (2d) 266 (1993). This rule applies to impeachment evidence as well as exculpatory evidence. *State v. Bryant,* 307 S.C. 458, 415 S.E. (2d) 806 (1992). Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed. (2d) 481 (1985).

Von Dohlen's purpose in seeking disclosure of the alleged forgery was to impeach Altman's credibility. Altman, a witness for the State, testified that, when asked "why he did something like that," Von Dohlen told him the victim wouldn't give him change and acted "like a bitch." At noted in Issue 4, *infra,* this statement was cumulative to Von Dohlen's statement to police. Additionally, the statement was cumulative to testimony elicited from Officer Preacher by Von Dohlen. Accordingly, we find no reasonable probability that impeachment of Altman's credibility would have changed the result of trial.

## 2. JURY VOIR DIRE

Von Dohlen contends the trial court's *voir dire* impermissibly led prospective jurors to believe he had the burden of proving mitigation, and that they must

---

[5] Further, the case relied upon by the dissent, *Fitzgerald v. Bass,* 6 Va. App. 38, 366 S.E. (2d) 615 (1988), declined to address the merits of the defendant's *Brady* claim. *Fitzgerald* addressed whether the State may knowingly rely on false testimony to secure a conviction. Here, there is no evidence the State relied on false testimony by Magistrate Altman.

weigh aggravation and mitigating circumstances to determine punishment.

No objection to *voir dire* was raised below and accordingly, the issue is not preserved for review. *State v. Torrence, supra.*

### 3. VOLUNTARINESS OF STATEMENT

After the murder weapon was retrieved from the pawn shop, Von Dohlen was taken to SLED headquarters in Columbia for a polygraph exam. He was given *Miranda*[6] warnings and the polygraph administered. The polygraph indicated deception and, at approximately 7:00 p.m., after further *Miranda* warnings, Lieutenant Preacher, who knew Von Dohlen,[7] began interrogation. Von Dohlen maintained his innocence. At approximately 9:00 p.m., Agent Murray entered the room and showed Von Dohlen a composite sketch of himself in an attempt to lead him to believe police had a witness who had placed him at the scene. The composite was actually drawn by the police artist through the one-way window. Thereafter, Von Dohlen was shown some spent shell casings allegedly recovered in connection with the crime. The casings were not in fact found at the crime scene. Von Dohlen nonetheless continued to maintain his innocence. At approximately 10:30 p.m., Von Dohlen confessed to Lieutenant Preacher.

According to the in camera testimony of Preacher and Detective Zorn, after Von Dohlen verbally confessed to Preacher but prior to his signing a transcribed statement, Von Dohlen asked Zorn "how much time he could get," and was advised by Zorn he could get the death penalty. Preacher and Zorn maintained no promises were made to him regarding punishment. At the conclusion of the *Jackson v. Denno*[8] hearing, the court ruled Von Dohlen's statement admissible under the totality of the circumstances.

Thereafter, the court reopened the Denno hearing to take the testimony of two newspaper reporters who had a conversation with Preacher and Zorn the day after the confession.

---

[6] *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. (2d) 694 (1966).

[7] Preacher's sister-in-law lived down the street from Von Dohlen in Goose Creek and Preacher's wife had gone to school with Von Dohlen's wife. Preacher's children had spent the night at Von Dohlen's house.

[8] 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. (2d) 908 (1964).

According to the reporters, Preacher and Zorn told them they had made a "deal" with Von Dohlen not to seek the death penalty in exchange for his statement. Preacher and Zorn retook the stand and maintained that no deals or promises were made. Preacher testified "there was no discussion whatsoever of any deals, any promises made to him. . . ." However, after Von Dohlen had given his oral confession, he was told that "the State might take [his giving a statement] into consideration and be lenient."

Von Dohlen maintains the totality of these circumstances rendered his statement involuntary and inadmissible. We disagree.

We agree with Von Dohlen that the police tactics used in this case were reprehensible. However, although we find the misrepresentation of evidence by police to be a deplorable practice, the present record simply does not sustain Von Dohlen's claim that his will was overborne, so as to render his confession involuntary.

A confession is not admissible unless it was voluntarily made. *State v. Childs*, 299 S.C. 471, 385 S.E. (2d) 839 (1989). A determination of whether a confession was given voluntarily requires an examination of the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed. (2d) 854 (1973); *State v. Franklin*, 299 S.C. 133, 382 S.E. (2d) 911 (1989). The question is whether the defendant's will was overborne when he confessed. *Schneckloth, supra*. The burden is on the State to prove by a preponderance of the evidence that the defendant's rights were voluntarily waived. *State v. Washington*, 296 S.C. 54, 370 S.E. (2d) 611 (1988). Where there is conflicting evidence about a confession, the court must first make a finding as to the validity of the statement. *State v. Atchison*, 268 S.C. 588, 235 S.E. (2d) 294 (1977), *cert. denied*, 434 U.S. 894, 98 S.Ct. 273, 54 L.Ed. (2d) 181 (1977). If the statement is found to be valid by the court, it must be submitted to the jury. *State v. Childs*, 299 S.C. 471, 385 S.E. (2d) 839 (1989). On appeal, the conclusion of the trial judge as to the voluntariness of a confession will not be reviewed unless so erroneous as to show an abuse of discretion. *State v. Livingston*, 223 S.C. 1, 73 S.E. (2d) 850 (1952), *cert. denied*, 345 U.S. 959, 73 S.Ct. 944, 97 L.Ed. 1379 (1953).

As was noted by the Third Circuit Court of Appeals in

*Miller v. Fenton,* 796 F. (2d) 598, 604-605 (3rd Cir.), *cert. denied,* 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed. (2d) 587 (1986),

> Few criminals feel impelled to confess to the police purely of their own accord without any questioning at all. . . . Thus, it can almost always be said that the interrogation caused the confession. . . . It is generally recognized that the police may use some psychological tactics in eliciting a statement from a suspect. . . . These ploys may play a part in the suspect's decision to confess, but so long as that decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary.

Both this Court and the United States Supreme Court have recognized that misrepresentations of evidence by police, although a relevant factor, do not render an otherwise voluntary confession inadmissible. *Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed. (2d) 684 (1969); *State v. Rabon,* 275 S.C. 459, 272 S.E. (2d) 634 (1980). *See also Annotation* 99 ALR (2d) 772 (confession obtained through subterfuge is admissible if method used is not likely to procure an untrue statement). The pertinent inquiry is, as always, whether the defendant's will was "overborne." *See Frazier v. Cupp, supra; Miller v. Fenton, supra. See also Ledbetter v. Edwards,* 35 F. (3d) 1062 (6th Cir. 1994), *cert. denied,* — U.S. —, 115 S.Ct. 2584, 132 L.Ed. (2d) 833 (1995) (defendant's will is not overborne merely because he is led to believe government's knowledge of his guilt is greater than it actually is). The present record reveals, not a defendant whose will was overborne by police, but one who, after considering his options, knowingly waived his *Miranda* rights and voluntarily decided to confess the details of the crime to police.

Moreover, although newspaper reporters testified they believed Von Dohlen's statement was given "in exchange for" a deal, Preached maintained that no deals were made and that Von Dohlen had already confessed before inquiring as to possible punishment. Likewise, Zorn maintained that no promises were made concerning sentencing. "A statement induced by a promise of leniency is involuntary only if so connected with the inducement as to be a consequence of the promise." *State v. Rochester,* 301 S.C. 196, 200,

391 S.E. (2d) 244, 246-247 (1990). Clearly, the testimony of Zorn and Preacher supports the trial court's finding that the statement was not given in exchange for leniency. Accordingly, the ruling should not be disturbed. *State v. Rochester*, *supra* (the conclusion of the trial judge on issues of fact as to the voluntariness of a confession will not be disturbed unless so manifestly erroneous as to show an abuse of discretion); *State v. Howard*, 296 S.C. 481, 374 S.E. (2d) 284 (1988) (where there is conflicting evidence as to whether defendant's statement is voluntary it is, in the first instance, the province of the trial court to determine this factual issue by the preponderance of the evidence).

Finally, the fact that Preacher knew and was empathetic to Von Dohlen is insufficient to render the statement involuntary. *Beckwith v. United States*, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed. (2d) 1 (1976); *Miller v. Fenton*, *supra* (upholding admissibility of defendant's statement notwithstanding police's friendly approach, lies concerning evidence, and promises to help the defendant get psychiatric care).

In sum, the totality of the circumstances does not demonstrate that Von Dohlen's will was overborne by police. He was repeatedly read his *Miranda* rights, was questioned from approximately 7:00 to 10:00 p.m., was permitted to use the phone, bathroom, etc., and was not threatened or coerced. Accordingly, the trial court properly admitted his statement to police. It was then within the province of the jury to determine the voluntariness of the statement.

### 4. STATEMENT TO MAGISTRATE ALTMAN

Von Dohlen next asserts his statement to Magistrate Altman was obtained in violation of *Edwards v. Arizona*[9] and *Michigan v. Jackson*.[10] He contends Altman was a state actor and therefore, the statement was the result of illegal custodial interrogation. We disagree.

The night after Von Dohlen confessed, Magistrate Altman went to the detention center to see him. Altman testified he went as Von Dohlen's employer and friend because Von

---

[9] 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed. (2d) 378 (1981).

[10] 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed. (2d) 631 (1989).

Dohlen had worked for him at the pawn shop for over a year. He insisted that his duty as part-time magistrate had nothing to do with his going to see Von Dohlen. He was let in after hours because police knew him. According to Altman, he asked Von Dohlen "why he did something like that," and Von Dohlen told him "he had gone over and asked for change and she just didn't have change and . . . said, you know, my brother's dead and you don't deserve to live and she acted like a bitch." After an in camera hearing, the trial judge ruled Altman was acting in his capacity as Von Dohlen's employer, such that the statement was admissible.[11]

Once an accused requests counsel, police interrogation must cease unless the accused himself "initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed. (2d) 378, 386 (1981). Interrogation is defined as express questioning, or its functional equivalent which includes "words or actions **on the part of the police** . . . that the police should know are reasonably likely to elicit an incriminating response." *State v. Sims*, 304 S.C. 409, 417, 405 S.E. (2d) 377, 381 (1991) (*citing Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-1690, 64 L.Ed. (2d) 297, 308 (1980)). (Emphasis supplied.) We have previously upheld the voluntariness of a defendant's statements to his cellmate and uncle, notwithstanding the cellmate was acting at the behest of the police and the uncle was brought to the penitentiary by the Sheriff. *State v. Bell*, 250 S.C. 37, 156 S.E. (2d) 313 (1967), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991).

Contrary to Von Dohlen's contention, his statement to Magistrate Altman did not occur during custodial interrogation by police or police agents. Rather, the statement was a voluntary response made to an employer. As with Von Dohlen's statement to police, it was for the trial judge to determine, in the first instance, whether Altman was action as a state agent in

---

[11] Although confessions to one in authority, such as an employer, were once presumed to be induced, *State v. Kirby*, 32 S.C.L. (1 Strob.) 155 (1846), more recent cases recognize that such a rule, if ever established, has certainly been modified. *State v. Branham*, 13 S.C. 389 (1879). Accordingly, a statement to an employer is no longer presumed to be involuntary. Such a determination is for the trial court.

going to see him. *State v. Howard, supra* (province of the trial court to determine factual issues by the preponderance of the evidence). Here, there is ample evidence to support the trial court's ruling Altman went to the jail to see Von Dohlen as his employer, rather than as a magistrate. Accordingly, we find no error in submission of this statement to the jury.

In any event, even were we to find Von Dohlen's statement to Altman inadmissible, it was cumulative to his statement to police. Contrary to Von Dohlen's contention, the statement to Altman does not necessarily indicate that the shooting was intentional. The statement to Altman is entirely consistent with Von Dohlen's previous statement to police and does not negate his previous claim of accident. Accordingly, since this confession was cumulation to his statement to police, any error in its admission was harmless. *State v. Rochester, supra.*

## 5. TESTIMONY OF VICTIM'S FATHER

Von Dohlen asserts error in admission of testimony that the Victim's father wanted the State to seek the death penalty. Von Dohlen raised no objection to this testimony and, accordingly, the issue is not preserved for review. *State v. Torrence, supra.* Moreover, Von Dohlen elicited this information and should not now be heard to complain of an error induced by his own conduct. *State v. McCrary,* 242 S.C. 506, 131 S.E. (2d) 687 (1963).

## 6. REASONABLE DOUBT CHARGE

Von Dohlen asserts error in the court's "reasonable doubt" charge. Von Dohlen raised no objection to this charge and, accordingly, the issue is not preserved for review. *State v. Torrence, supra.*

## 7. MALICE CHARGE

Von Dohlen contends the trial court's malice charge created an unconstitutional presumption of malice in violation of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed. (2d) 39 (1979) and *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed. (2d) 344 (1985). Von Dohlen raised no objection to the charge and, accordingly, the issue is not preserved for review. *State v. Torrence, supra.*

In any event, when reading the trial judge's charge in its entirety, it is clear that the judge was, in reality, attempting to define the concept of "implied malice" as distinguished from the concept of "express malice." Considering the charge as a whole, we find that reasonable jurors would not have understood the charge as creating a presumption of malice. *See State v. Bell*, 305 S.C. 11, 406 S.E. (2d) 165 (1991), *cert. denied*, 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed. (2d) 791 (1992).

In *Bell*, the defendant complained the trial judge improperly defined malice as "the doing of a wrongful act intentionally and without just cause or excuse." We stated "[t]he trial judge's definition of malice is correct . . . and the charge given is devoid of any presumption. Moreover, the trial judge clearly instructed the jury it was the State's burden to prove malice." 305 S.C. at 19, 406 S.E. (2d) at 170.

Here, the trial court thoroughly charged the jury that the burden of proving malice was on the State, and that "malice is never presumed from the use of a deadly weapon," and repeatedly emphasized the permissive inference of malice. Moreover, at no time does the charge use the work "presumption." The charge as a whole was sufficient. *See State v. Patrick*, 289 S.C. 301, 345 S.E. (2d) 481 (1986), *overruled on other grounds*, *Casey v. State*, 305 S.C. 445, 409 S.E. (2d) 391 (1991).

## 8. TESTIMONY OF VICTIM'S PAIN

At sentencing, Von Dohlen objected to testimony of a forensic pathologist that the Victim's wounds would have been extremely painful. Von Dohlen claims the testimony was speculative, expert testimony was unnecessary, and the pathologist had insufficient experience in the field. We disagree.

The admission of expert testimony is within the discretion of the trial court. *State v. Whaley*, 305 S.C. 138, 406 S.E. (2d) 369 (1991). The party offering the expert has the burden of showing his witness possesses the necessary learning, skill, or practical experience to enable the witness to give opinion testimony. Generally, defects in the amount and quality of education or experience go to the weight of the expert's testimony and not its admissibility. *State v. Schumpert*, — S.C. —, 435 S.E. (2d) 859 (1993).

The amount of pain a victim suffered is a relevant circumstance at sentencing. *Cf. State v. Davis,* 309 S.C. 326, 422 S.E. (2d) 133 (1992), *cert. denied,* 508 U.S. 915, 113 S.Ct. 2355, 124 L.Ed. (2d) 263 (1994). Moreover, we have implicitly recognized that pain suffered by a victim is a proper basis of expert testimony. *State v. Damon,* 285 S.C. 125, 328 S.E. (2d) 628 (1985), *cert. denied,* 474 U.S. 865, 106 S.Ct. 187, 88 L.Ed. (2d) 156, *overruled in part on other grounds, Torrence, supra.*

Here, after having been previously qualified in forensic pathology, the expert testified that pain could be quantified to some degree by the severity of the tissue damage and the injury. He acknowledged that the amount of pain was a subjective judgment. Any defects in this testimony went to weight rather than admissibility. We find no abuse of discretion in its admission.

### 9. PHOTOGRAPH

Von Dohlen next asserts error in the admission of a black and white photograph of the Victim taken at the murder scene. We have viewed the photograph and do not find it unnecessarily gruesome. Moreover, the photo depicts the Victim's body in "substantially the same condition" as Von Dohlen left it, it depicts the Victim at the crime scene, and it is less graphic than the alternative color photo the solicitor could have offered. We find no error. *Riddle v. State,* 314 S.C. 1, 443 S.E. (2d) 557 (1994).

### 10. DISPROPORTIONATE SENTENCE

Finally, Von Dohlen contends the death sentence in this case is disproportionate to the penalty imposed in other cases in violation of S.C. Code Ann. § 16-3-25(C)(3) (1985). We disagree.

The sentence here is proportionate to that in similar cases and is neither excessive nor disproportionate to the crime in this case. *State v. Bell,* 305 S.C. 11, 406 S.C. (2d) 165 (1991), *cert. denied,* 502 U.S. 1038, 112 S.Ct. 888, 116 L.Ed. (2d) 791 (1992) (murder and armed robbery of school principal in Anderson); *State v. Sims,* 304 S.C. 409, 405 S.E. (2d) 277 (1991), *cert. denied,* 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992) (robbery and murder of Domino's Pizza employee); *State v. Green,* 301 S.C. 347, 392 S.E. (2d) 157, *cert. denied,* 498

U.S. 881, 111 S.Ct. 229, 112 L.Ed. (2d) 183 (1990) (robbery and murder of woman outside a mall in Charleston).

## CONCLUSION

Von Dohlen's convictions and sentence are AFFIRMED.

TOAL, MOORE, BURNETT, JJ., concur.

FINNEY, C.J., dissenting in separate opinion.

FINNEY, Chief Justice:

For the reasons given below, I respectfully dissent, and would reverse and remand for a new trial.

### A. *In Favorem Vitae Review*

I disagree with the majority's conclusion that this appeal is not subject to *in favorem vitae* review. In *State v. Torrence*, 305 S.C. 45, 406 S.E. (2d) 315 (1991), a majority of the Court held the doctrine inapplicable "in all trials beginning after the date of this opinion. . . ." (emphasis added). As the majority acknowledges, this trial began on the date of the opinion. By its own terms, *Torrence* is inapplicable here.

The majority, however, relies on the fact the solicitor "advised" the trial judge and appellant's lawyers of the *Torrence* opinion on the morning it was filed. What the solicitor did not do, however, was produce a copy of the opinion, indicate its effective date, or inform appellant's attorneys that in abolishing the doctrine, this Court adopted a contemporaneous objection rule. The solicitor's action cannot and should not be used to overcome this Court's clear mandate. Unequivocally, this appeal must be reviewed *in favorem vitae. State v. Torrence, supra.*

### B. *Brady Violation*

The majority concludes appellant failed to establish the State withheld impeaching evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. (2d) 215 (1963). I disagree.

Consumer Affairs began investigation the pawn shop at the request of the Goose Creek Police Department. In the course of this investigation Consumer Affairs learned of appellant's arrest and inquired about certain employee forms which pawn

shop operators are required to file. Altman,[1] through his attorney, supplied copies of the forms, which were obviously altered. Among these forms was a statement allegedly notarized by Captain Dewitt of the Berkeley County Sheriff's Department. An investigator from Consumer Affairs interviewed Dewitt and informed him of the agency's investigation. Dewitt testified he told the investigator his signature on the document was a forgery. As a result of this investigation, the Altmans relinquished their pawnbroker's license. While the investigation began before the murder, the interview with Captain Dewitt, the production of forged documents, and the subsequent surrender of the pawnbroker's license occurred after the murder but before appellant's trial. The murder investigation was conducted by the Berkeley County Sheriff's Department, Dewitt's employer.

The novel question before the Court is a narrow one: When the law enforcement agency investigating the crime has actual knowledge of impeaching evidence regarding a key state's witness, is that knowledge imputable to the solicitor? The answer is clearly "Yes." *See, e.g., Fitzgerald v. Bass,* 6 Va. App. 38, 366 S.E. (2d) 615 (1988) and cases cited therein (constructive knowledge attributed to prosecutor where the information is in the possession of the same police force investigation the case). We need not reach the more difficult question whether, but for the involvement of the Berkeley County Sheriff's Department in both matters, Consumer Affairs' knowledge should be imputed to the solicitor.

Having determined the information was imputable to the solicitor, the next question is whether the evidence is material. I agree with the majority's statement of the rule: Evidence is material under *Brady* only if there is a reasonable probability that, had the evidence been timely disclosed, the result of the trial would have been different. *State v. Bryant,* 307 S.C. 458, 415 S.E. (2d) 806 (1992). In my opinion, had the jury known that Magistrate Altman's business had closed rather than contest charges it had created false documents and filed them with a state agency, and that there had been a

---

[1] While Magistrate Altman's wife was the nominal owner of the Quick Silver Pawn Shop, the evidence shows Magistrate Altman, rather than his wife, actually ran the business and handled its affairs.

forgery of a police officer's signature on one of those documents, there is a reasonable probability that Magistrate Altman's credibility would have been severely injured. An informed jury might well have disbelieved the magistrate's trial testimony. Since I would hold appellant's other statement must also be excluded,[2] I conclude there is a reasonable probability that the trial would have had a different result had the State properly disclosed the *Brady* material. I would reverse.

## C. *Admissibility of Statements*

I also dissent from the majority's conclusions that appellant's statements to the police and to Magistrate Altman were admissible. In my opinion, the statement made to the police must be suppressed as involuntary and obtained in violation of appellant's due process rights. I would also suppress the statement to Magistrate Altman because it was obtained in violation of appellant's Fifth and Sixth amendment rights.[3]

As to the first statement, the majority acknowledges the police misconduct in fabricating physical evidence in order to coerce a confession was "reprehensible" and "deplorable," but nonetheless condones the fruit of these acts. I will not. The countenancing of such conduct can only further erode the public's confidence in law enforcement, and their respect for the justice system. Wherever that fine line between acceptable and unacceptable deceptive police conduct may be, there can be no question that it had been crossed here. I would hold the trial judge erred in failing to suppress this statement which was unconstitutionally coerced as the result of police fabrication of physical evidence. *See State v. Cayward,* 552 So. (2d) 971 (Fla. App. (2d) Dist. 1989) *review dismissed* 562 So. (2d) 347 (Fla. 1990); *see also State v. Farley,* 192 W. Va. 247, 452 S.E. (2d) 50, 60 footnote 13 (W. Va. 1994).

I would also hold appellant's statement to Magistrate Altman must be suppressed.[4] Magistrate Altman had intimately involved himself in the police investigation of this case, coming to the crime scene and discussing the case with investiga-

---

[2] See § C, *infra.*

[3] While this holding effectively moots the *Brady* issue, I write separately on it because of my disagreement with the result reached by the majority.

[4] Appellant does not assert this second statement should be suppressed as the fruit of the unconstitutional first statement.

tion officers, receiving telephone updates at home concerning appellant's actions at SLED Headquarters, and, taking advantage of his position as magistrate, being admitted to appellant's jail cell after visiting hours. Once in the cell Magistrate Altman did not ask appellant personal or business questions, but instead questioned him about the murder. In my opinion, the evidence is susceptible only of the finding Magistrate Altman was acting as a law enforcement agent. Further, it is undisputed that appellant's Sixth Amendment right to counsel had attached and that no *Miranda* warnings were given nor waiver obtained before the jail cell interrogation by the magistrate. Consequently, admission of appellant's statement to Magistrate Altman is barred by both the Fifth and Sixth Amendments. *See United States v. Taylor*, 800 F. (2d) 1012 (10th Cir. 1986) (whether person is police agent depends on facts and circumstances).

### D. *Malice Charge*

The trial judge charged the jury that "malice is implied where one intentionally and deliberately does an unlawful act ...." Unless deemed harmless error, which the majority does not and cannot, this unconstitutional charge requires reversal. *Yates v. Evatt*, 500 U.S. 391, 111 S.Ct. 1884, 114 L.Ed. (2d) 432 (1991). Reliance on *State v. Bell*, 305 S.C. 11, 406 S.E. (2d) 165 (1991) is misplaced. In *Bell*, the judge charged the jury that malice is *defined* as the intentional doing of an unlawful act, not that it was *implied* from such actions. Further, there is not meaningful difference between the terms "implied" and "presumed." *Yates, supra*. This jury charge mandates reversal under the facts of this case.

For the reasons given above, I would reverse. I respectfully dissent.