**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

David Gerrard Johnson, Appellant.

Appellate Case No. 2012-209267

Appeal From Florence County
Thomas A. Russo, Circuit Court Judge

Unpublished Opinion No. 2014-UP-167
Heard February 6, 2014 – Filed April 9, 2014

**AFFIRMED**

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Melody Jane Brown, all of Columbia; and Solicitor E.L. Clements, III, of Florence, for Respondent.

**PER CURIAM:** David Gerrard Johnson appeals his convictions for murder, first-degree burglary, armed robbery, possession of a weapon during the commission of a violent crime, and conspiracy, arguing the trial court erred in (1) admitting a statement Johnson made to the police and evidence that was the product of this statement, (2) finding Johnson knowingly and voluntarily consented to providing DNA and fingerprint evidence, (3) excusing a juror, and (4) admitting graphic photographs of the deceased victim's body. We affirm.

Family members of the victim initially became concerned after receiving a call informing them the victim failed to show up for work. They went to her home, where they noticed signs of suspicious activity. The police later found the victim's car away from her home. Nearby, they found a bag of pillows that tested presumptive positive for blood.

After additional investigation, police notified Johnson through Johnson's father and "word on the street" that they wanted to speak with him about the victim's disappearance. Johnson voluntarily went to the police station and, after waiting several hours, agreed to talk with one of the officers. The officer then read Johnson his *Miranda* rights.[1] Johnson then proceeded to give several different accounts about what had happened, but eventually led the police to the victim's body. When the officers returned to the police station with Johnson, Johnson again received *Miranda* warnings, after which he gave a formal statement in which he admitted to being in the victim's home when she died and witnessing her death at the hand of another individual. He also told police he accompanied other participants in the crime when they removed the victim's body, which they accomplished by using her car to drive it to a remote location. Johnson also revealed that after he and other participants drove the victim's car back to her home, he remained inside the car while the others stole items from inside the residence. Johnson also showed the police various electronic items that had been taken from the victim's home and were being stored at his father's house.

Johnson later signed a release form authorizing law enforcement to obtain his fingerprints and a sample of his saliva. Forensics testing showed the victim's blood on the mattress, bed clothes, and furniture in her bedroom. Additional tests

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

revealed Johnson's DNA on the steering wheel of the victim's car and his fingerprints on the driver's side area.

Johnson was subsequently indicted for murder, first-degree burglary, armed robbery, possession of a weapon during the commission of a violent crime, and conspiracy.  A jury found him guilty on all charges.

1.      Johnson first argues that because of the evidence demonstrating his lack of mental capacity to make a knowing and voluntary waiver of his constitutional rights, the trial court should not have admitted the statement he made to the police. We hold the trial court did not abuse its discretion in admitting the statement; therefore, we affirm the court's ruling.  *See State v. Von Dohlen*, 322 S.C. 234, 243, 471 S.E.2d 689, 695 (1996) ("On appeal, the conclusion of the trial judge as to the voluntariness of a confession will not be reviewed unless so erroneous as to show an abuse of discretion.").  Here, the trial court, though acknowledging the prolonged time that Johnson was at the police department before giving his statement, noted: (1) there was no undue coercion, threats, or force on the part of law enforcement in procuring the statement; (2) Johnson had come to the police station voluntarily; (3) before making his statement, Johnson had been provided food, drink, and the opportunity to rest; (4) Johnson had been read his *Miranda* rights twice and signed a waiver form; (5) Johnson had previously been through the criminal justice system, having entered into guilty pleas in the past; (6) none of the officers had reason to believe that Johnson did not understand his rights as read and explained to him; and (7) Johnson's responses throughout the transcript of his statement indicated he understood the questions that the officers asked him. Furthermore, a clinical psychologist who evaluated Johnson a few months before his trial testified that Johnson understood that he should not talk to the solicitor without his attorney being present and could not be forced to talk in court.  Even with the acknowledgment that Johnson may have had cognitive deficits, there is evidence to support the trial court's admission of his statement.  *See State v. Myers*, 359 S.C. 40, 47, 596 S.E.2d 488, 492 (2004) ("A determination whether a confession was 'given voluntarily requires an examination of the totality of the circumstances.'" (quoting *Von Dohlen*, 322 S.C. at 243, 471 S.E.2d at 694-95)); *State v. Miller*, 375 S.C. 370, 378-79, 652 S.E.2d 444, 448 (Ct. App. 2007) ("When reviewing a trial judge's ruling concerning voluntariness, the appellate court does not re-evaluate the facts based on its own view of the preponderance of the evidence, but simply determines whether the trial judge's ruling is supported by any evidence." (citing *State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001))).

2.     Johnson also argues the trial court erred in admitting evidence that was the product of his statement because that evidence was the fruit of the poisonous tree. Because, however, Johnson's statement was obtained legally, the admission of any evidence resulting from the information he provided is not barred by the doctrine of the fruit of the poisonous tree.  *See State v. Copeland*, 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996) ("The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality.").

3.     Johnson also argues the trial court erroneously found he knowingly and voluntarily consented to providing the police a DNA sample and fingerprint standard, again relying primarily on evidence that he lacked the mental capacity to make a knowing and voluntary waiver of this right.  Intellectual disability alone, however, does not amount to an inability to give consent, which, like knowledge in a waiver situation, requires a determination based on the totality of the circumstances.  *See State v. Wallace*, 269 S.C. 547, 550, 238 S.E.2d 675, 676 (1977) ("Whether a consent to search was voluntary or the product of duress or coercion, express or implied, is a question of fact to be determined from the 'totality of the circumstances.'").  Here, the trial court, when determining whether Johnson signed the consent form voluntarily, noted Johnson had held a job and received wages, thus evidencing some ability to understand a request for fingerprint and DNA evidence.  Furthermore, "our state standard does not require a law enforcement officer conducting a search to inform the defendant of his right to refuse consent."  *State v. Forrester*, 343 S.C. 637, 645, 541 S.E.2d 837, 841 (2001).

4.     Johnson next contends he did not receive a fair trial because the trial court erroneously excused a juror who stated she could be fair and impartial even though she knew members of Johnson's family. We find no error in the trial court's decision to excuse the juror.  By statute, the trial court must make its own determination as to whether a prospective juror should be excused from serving on a particular case and "[i]f it appears to the court that the juror is not indifferent in the cause, he must be placed aside as to the trial of that cause and another must be called."  S.C. Code Ann. § 14-7-1020 (Supp. 2013); *see also State v. Franklin*, 267 S.C. 240, 248, 226 S.E.2d 896, 899 (1976) (stating the words "if it appears to the court," as used in a prior version of section 14-7-1020, "are evidence of discretion vested in the trial judge" (citing *State v. Faries*, 125 S.C. 281, 287, 118 S.E. 620,

622 (1923))).  Here, even though the juror stated she could be fair, she also expressed discomfort about the prospect of having to face Johnson's family if she were to sit on a jury that eventually convicted him.  Given the juror's hesitation, we hold the trial court, as required by statute, made an independent finding as to whether the juror was genuinely "indifferent in the cause" and properly exercised its discretion in excusing her.  *See State v. Rogers*, 263 S.C. 373, 381, 210 S.E.2d 604, 608 (1974) (stating the "applicable general rule" that the "matter of excusing jurors is addressed to the sound discretion of the trial judge, the exercise of which will not be interfered with unless it is clearly shown to have been abused to the actual prejudice of the complaining party" (quoting 50 C.J.S. Juries § 205 (1947))); *State v. Faries*, 125 S.C. 281, 288, 118 S.E. 620, 622 (1923) ("The manner and bearing of the juror, nature's stamp of character on form and countenance, are evidential exhibits for the consideration of the circuit judge, which may be more indicative of the juror's real attitude than his words.  Those things cannot adequately be spread upon the record." (citation omitted)).

5.      Finally, Johnson takes issue with the trial court's decision to admit three photographs of the deceased victim's body.  We find no error.  The photographs were relevant, as required by Rule 401, SCRE, in that they had a tendency to enhance the probability of the existence of certain facts, including information in Johnson's statement about the manner of the victim's death and the concealment and removal of her remains.  Furthermore, the photographs, in addition to being relevant, were not "calculated to arouse the sympathy or prejudice of the jury" so as to justify their exclusion.  *State v. Torres*, 390 S.C. 618, 623, 703 S.E.2d 226, 228 (2010). To the contrary, the trial court was presented with other photographs, which it excluded as overly gruesome and graphic.

**AFFIRMED.**

**HUFF, THOMAS, and PIEPER, JJ., concur.**