562 S.E.2d 683

**The STATE, Respondent,**

v.

**Sandra CRAWLEY, Appellant.**

**No. 3475.**

Court of Appeals of South Carolina.

Heard Jan. 10, 2002.

Decided April 8, 2002.

Rehearing Denied May 15, 2002.

460

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Tracey C. Green all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for respondent.

HOWARD, J.

Sandra Crawley was convicted of murder and sentenced to life in prison. She appeals, arguing the trial court erred by (1) allowing her confession into evidence; (2) denying her motion for a mistrial; and (3) allowing the State to introduce testimony regarding her relationship with Eugene Davis. We affirm.

## FACTS/PROCEDURAL HISTORY

Eugene Davis was stabbed to death on October 28, 1987. The murder remained unsolved until January 12, 1999. While investigating Davis's death, the police determined that Crawley and her husband had a relationship with Davis. Specifically, police learned that Crawley stayed with Davis on several occasions after her husband assaulted her.

As a result of this information, Officer Denton transported Crawley from the Spartanburg County Detention Center, where she was incarcerated on an unrelated charge, to the Sheriff's Department, where she was questioned regarding her involvement. During the interrogation, Crawley twice confessed that she participated in Davis's murder.

Crawley was ultimately convicted of murder and sentenced to life in prison. This appeal follows.

## DISCUSSION

### A. Admissibility of the Confessions

The first issue presented on appeal is whether the trial judge erred in admitting Crawley's two statements into evidence. The trial court held a *Jackson v. Denno*[1] hearing and then ruled Crawley was advised of her *Miranda*[2] rights,

---

**1.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

knowingly and intelligently waived those rights, and gave her statements to the police freely and voluntarily. Crawley argues the trial court erred in not suppressing her confessions.

■ The test regarding the admissibility of a confession is voluntariness. *State v. Von Dohlen*, 322 S.C. 234, 243, 471 S.E.2d 689, 694 (1996) ("A confession is not admissible unless it was voluntarily made."). The voluntariness of a confession is determined from an examination of the totality of the circumstances. *Id.* at 243, 471 S.E.2d at 694–95. To introduce the statement made after a defendant has been advised of his rights, the State must prove by a preponderance of the evidence he voluntarily waived those rights. *State v. Reed*, 332 S.C. 35, 42, 503 S.E.2d 747, 750 (1998). "Once a voluntary waiver of the *Miranda* rights is made, that waiver continues until the individual being questioned indicates that he wants to revoke the waiver and remain silent or circumstances exist which establish that his 'will has been overborne and his capacity for self-determination critically impaired.'" *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990) (quoting *State v. Moultrie*, 273 S.C. 60, 62, 254 S.E.2d 294, 294–95 (1979)). This Court will not disturb the trial court's findings of fact regarding the voluntariness of a statement absent an abuse of discretion. *State v. Kennedy*, 333 S.C. 426, 429, 510 S.E.2d 714, 715 (1998).

The interrogation lasted approximately seven and a half hours. During this time, Crawley was given a lie detector test, which lasted an hour and a half. She also received dinner and restroom breaks. At 11:45 p.m., Crawley gave a statement in which she confessed to participating in Davis's murder. Approximately an hour later, she gave a more detailed statement in which she stated, "I did stab [Eugene Davis] along with [my husband]. I don't remember how many times I stabbed him, but I'm sure it was more than once."

■ On appeal, Crawley first argues the confessions were inadmissible because she was not told Davis's murder was the subject of the inquiry before she waived her right to remain silent. We disagree.

Officer Denton admitted he did not tell Crawley the subject of the investigation before she arrived at the Sheriff's Depart-

ment or before she signed the *Miranda* waiver. However, we conclude this does not affect the voluntariness of the confessions. *See Colorado v. Spring*, 479 U.S. 564, 576, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). As the Supreme Court reasoned,

> Once Miranda warnings are given, it is difficult to see how official silence could cause a suspect to misunderstand the nature of his constitutional right—"his right to refuse to answer any question which might incriminate him." *United States v. Washington*, 431 U.S. 181, 188, 97 S.Ct. 1814, 1819, 52 L.Ed.2d 238 (1977). "Indeed, it seems self-evident that one who is told he is free to refuse to answer questions is in a curious posture to later complain that his answers were compelled." *Ibid.* We have held that a valid waiver does not require that an individual be informed of all information "useful" in making his decision or all information that "might ... affec[t] his decision to confess." *Moran v. Burbine*, 475 U.S. at 422, 106 S.Ct. at 1141, 89 L.Ed.2d 410. "[W]e have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights." *Ibid.* ... [T]he additional information could affect only the wisdom of a Miranda waiver, not its essentially voluntary and knowing nature. Accordingly, the failure of the law enforcement officials to inform [the defendant] of the subject matter of the interrogation could not affect [the defendant's] decision to waive his Fifth Amendment privilege in a constitutionally significant manner.

*Id.* at 576–577, 107 S.Ct. 851, 93 L.Ed.2d 954. Therefore, Crawley's ignorance regarding the subject of the questioning does not make her confessions inadmissible.

■ Crawley next contends the police knew she was addicted to crack cocaine, pain pills, nerve pills, Xanax, Valium, and alcohol and used all of these substances on a daily basis. She testified she was suffering from withdrawal symptoms at the time she confessed to the murder because she had been in jail for three days and had not had access to the drugs. She claims her withdrawal affected her adversely, so as to render her confessions unknowing and involuntary.

However, Officer Wood testified he had known Crawley in his capacity as a police officer for seventeen years. According to Officer Wood, he was aware of Crawley's addiction, but Crawley did not act any different on the day of the interrogation than she did any other day. He testified she understood what was occurring, and he disputed her assertions that she asked to be left alone or that she cried during the interrogation.

We find this evidence supports the trial judge's conclusion that Crawley's statements were knowingly, intelligently, and voluntarily given, despite any withdrawal from alcohol and drugs. Therefore, the trial court did not abuse its discretion in admitting Crawley's statements. *Kennedy*, 333 S.C. at 429, 510 S.E.2d at 715; *see also Bright v. State*, 265 Ga. 265, 455 S.E.2d 37 (1995) (finding that even if the defendant had been exhibiting symptoms of drug withdrawal, that fact alone does not render the statement involuntary).

## B. Mistrial

Crawley next argues the trial court abused its discretion by refusing to declare a mistrial when a witness testified Crawley called Davis "from the jailhouse." Crawley argues this testimony placed her character in issue to her prejudice. We disagree.

The decision to grant or deny a motion for a mistrial is within the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion amounting to an error of law. *State v. Council*, 335 S.C. 1, 515 S.E.2d 508 (1999). Although this decision is vested in the sound discretion of the trial court, the power of the court to declare a mistrial should be used with the greatest caution and for plain and obvious causes. *State v. Johnson*, 334 S.C. 78, 512 S.E.2d 795 (1999).

During his testimony, Paul David Hensley testified he was a friend of Davis and he had also known Crawley and her family for a long time. Hensley stated he talked to Crawley on Davis's phone when she called prior to the murder. When the State inquired as to who initiated this phone call, Hensley replied, "I think she called him from the jailhouse, as far as I can remember." Crawley objected and moved for a mistrial.

The trial judge denied the motion, but instructed the witnesses not to mention a jail.

We conclude the trial judge did not abuse his discretion in denying the motion for a mistrial. Hensley's statement was vague and provided no particulars regarding Crawley's connection, if any, to the "jailhouse." It was not apparent from this casual remark whether Crawley herself was incarcerated or was visiting someone else at the jail. *See Council*, 335 S.C. at 1, 515 S.E.2d at 508 (ruling the trial judge did not abuse his discretion in denying a mistrial after witness improperly alluded to SLED fingerprint database containing the defendant's prior fingerprint card because it was questionable whether jury even understood the implication of a prior criminal record from the witness's statement, and therefore, there was no prejudice).

## C. Hearsay Testimony

Crawley next argues the trial judge erred by allowing testimony from the Davis's daughter, Teresa Davis Gilliam, that Davis told her he was dating Crawley and Crawley was going to come stay with him. Crawley argues this testimony was hearsay and highly prejudicial, requiring reversal. We disagree.

Any error in the admission of this testimony was clearly harmless because Crawley admitted her close relationship to Davis in her statement to police and Officer Wood testified without objection that Crawley stayed with Davis for two to three day periods, using his residence as a "safe house" when her husband beat her. Thus, we find no reversible error because the statement was merely cumulative. *See State v. Griffin*, 339 S.C. 74, 77–78, 528 S.E.2d 668, 670 (2000) ("There is no reversible error in the admission of evidence that is cumulative to other evidence properly admitted.").

## CONCLUSION

Accordingly, for the reasons discussed above, Crawley's conviction is

**AFFIRMED.**

CONNOR, and ANDERSON, JJ., concur.