703 S.E.2d 217

**The STATE, Respondent,**

v.

**LeQuint JOHNSON, Appellant.**

No. 26902.

Supreme Court of South Carolina.

Heard Oct. 5, 2010.

Decided Dec. 13, 2010.

Appellate Defender Robert M. Pachak, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, and Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia, and Solicitor Cecil Kelly Jackson, of Sumter, for Respondent.

Justice PLEICONES.

Appellant was convicted of two counts of murder, armed robbery, and unlawful possession of a weapon, and received consecutive life sentences for the murders, thirty years for armed robbery, and five years for the weapons charge. Appellant was tried jointly with Sharod Frazier. On appeal, appellant contends the trial court erred in denying appellant's mistrial motion, made after a State's witness committed a *Bruton*-type [1] error. We agree and reverse.

## FACTS

The State's primary witness was Sammy Baker a/k/a Supercat. Supercat testified about his activities on November 16–17, 2004. In relevant part, he testified that he took his friend Rashad Sharice Thomas a/k/a Rock to meet up with Rock's friend, co-defendant Frazier a/k/a Shy. Eventually they picked up Shy's cousin, appellant LeQuint Johnson a/k/a Q. Supercat did not know appellant. Rock testified that Supercat, Shy, and appellant were together when they dropped him off at his home around 9 pm on the 16th. He did not see or hear from them again.

Supercat testified that he, Shy, and appellant went to Nasty Cat's club, a/k/a The Barn, where Supercat saw his friend

---

1. *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

Tyrone Dinkins, a/k/a Good Buddy. Supercat followed Good Buddy, with Shy and appellant riding as passengers, to St. Charles Road where people raced their cars and bet on the races. The racing continued until 1 or 1:30 am November 17, when the racers decided to return to Nasty Cat's club. Shy and appellant stayed in Supercat's car while at St. Charles Road, and apparently no one saw them there just as no one had seen them earlier at Nasty Cat's club. Bud Reames, an older man riding as a passenger with Good Buddy, stayed in that car as well.

When the racers returned to Nasty Cat's, Supercat testified he and Good Buddy went in the bar but that Shy and appellant stayed in the car. The club was closing, so Supercat and Good Buddy drove to the Shell Station to buy gas. A videotape from the Shell Station shows Supercat and Good Buddy there around 2 am on the morning of the 17th, although there was testimony that the time might be off by an hour.

After riding around in their cars for a while, Supercat testified he challenged Good Buddy to a race. Good Buddy said to follow him, but that he had to stop and do something under his hood before he could race. Supercat testified Good Buddy pulled over and Supercat pulled in behind him. Supercat testified he got out of his car to help Good Buddy, who was out of his car, when gunshots rang out. Supercat testified he saw Shy standing by Good Buddy. When the gunfire ended, Shy told Supercat to get in the car and drive, while appellant, also armed and outside the car, told Shy they needed to kill Supercat. As Supercat drove, Shy threatened Supercat's sister, and then proceeded to count money. Supercat testified that he met up with Shy later at the Piggly Wiggly where Shy, who told Supercat he was a Blood, threatened Supercat. A witness testified she observed this long conversation and that Supercat looked fearful.

At 6:40 am on November 17th, an officer was dispatched to check out a report of a black male (Good Buddy) lying on the ground on the driver's side of a parked car in which a second black male (Reames) was observed seated in the passenger's seat. A SLED crime scene investigator testified that the man on the ground's pants pocket was turned inside out, and

change was scattered around the body and on top of it. Good Buddy was known to carry a good deal of cash. It was clear the two men had been shot to death.

The forensic pathologist testified Good Buddy had eight gunshot wounds from a 0.22. Reames, Good Buddy's passenger, had been shot twice with a 0.38 or a 0.357 magnum. Their time of death was estimated to have been 5 am.

Shy and appellant were tried jointly. Pre-trial, appellant sought a severance because Shy had made a statement to the police which implicated himself and another person ("Knock"). Alternatively, appellant sought suppression of Shy's statement. In this statement, Shy stated that he and 'Knock' were present when Supercat and another friend talked about getting Good Buddy. According to the statement, Shy and Knock were in Supercat's car when they went to a gas station, then followed Good Buddy and pulled him over. Supercat got out of the car and "let loose" (i.e. shot) both people in Good Buddy's car, using a 0.22 on Good Buddy and a 0.38 on the old guy (i.e. Reames). Shy admitted he and Knock took money from Good Buddy's pockets after Supercat killed him. Shy did not identify Knock.

The trial judge denied both appellant's motion for a severance and his request that Shy's statement not be admitted at their joint trial. The State suggested that Shy's statement could be redacted to eliminate the references to 'Knock.' At some point the trial judge apparently ruled that Shy's statement, with the two references to 'Knock' redacted, would be admitted.[2]

Prior to the introduction of Shy's statement, the trial judge gave the jury this charge:

Ladies and gentlemen, you're going to see the document in evidence that I have admitted. Certain portions of that document contain information that is not admissible in this case. Information that is not admissible, you should not consider in your deliberations. So don't—the fact that you see a certain part of it has been struck out, you should not consider that in any way. You will see those portions that

2. Whether this redaction was necessary or appropriate is not before the Court.

are admissible in this case in your deliberations. So those that have been redacted have nothing to do and are not admissible to this evidence in this case.

Sheriff's Investigator J.D. Dellinger testified to this statement given to him by "Shy" Frazier:

I met Supercat in Churchwood. I was on my way to work, but I stopped and began to talk to Supercat. I didn't go to work because I left with Supercat. We drove around for a while talking about who we going to rob for this day. We went to Nasty Cat's Barn, then Supercat met Seneca. They talked for a while on how they were going to get Good Buddy. Supercat stopped talking, then got in the car and told me to drive off. I did.

We went to this gas station, then we followed Good Buddy. We pulled him over. Supercat jump out, talk for a second, then let loose on both people. **Me** stayed in the car while Supercat let loose on both people. Then **me** jumped out the car and got the money out of Good Buddy's pockets. The gun Supercat had used on Good Buddy was a .22 revolver and he used a .38 revolver on old guy.

(bold representing points at where the words "and Knock" were covered up with black magic marker).

Investigator Dellinger continued to testify to his observations at the scene, and towards the end of his testimony the following exchange occurred between Investigator Dellinger and the solicitor:

Q. Now, was [appellant] arrested?

A. Yes, sir, he was.

Q. And the arrest of [appellant], how did that come about?

A. Based on our investigation.

Q. Based on your investigation. And what else?

A. I'm not sure I understand.

Q. The conversation with Sammy Baker [Supercat]?

A. Mr. Baker [Supercat] and Mr. Frazier [Shy].

Q. Okay.

Appellant immediately moved for a mistrial, arguing that the judge's "redaction" charge coupled with Investigator Dellinger's testimony that his conversation (i.e., the one leading to the

statement) with Shy led to appellant's arrest effectively violated *Bruton* by allowing Shy, a non-testifying codefendant, to inculpate appellant. Since Shy did not testify, appellant was denied the ability to confront or cross-examine him in violation of the Confrontation Clause and the hearsay rules. The judge found the error did not rise to the level requiring a mistrial.

## ISSUE

Did the trial judge err in denying appellant's mistrial motion?

## ANALYSIS

■ The denial of a mistrial motion following improper testimony by a State's witness is a matter resting in the trial court's sound discretion, and will be overturned on appeal only where there is an abuse of discretion amounting to an error of law. *State v. Crawley*, 349 S.C. 459, 562 S.E.2d 683 (2002). We find such an error here.

■ This case presents an unusual *Bruton*-type issue. Under *Bruton*, a non-testifying co-defendant's confession that inculpates another defendant is inadmissible at their joint trial, even if the jury is instructed that the confession can only be used as evidence against the confessor. However, such a confession may be admissible if the confession is redacted in a way that removes any reference to the non-testifying codefendant. *Richardson v. Marsh*, 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Gray v. Maryland*, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998).

■ Shy's confession was redacted to eliminate his references to "Knock;" there is, however, no evidence that appellant is known as "Knock." On the other hand, the redacted confession clearly has had a name eliminated from it, and the jury was charged about this omission. Investigator Dellinger's statement that appellant's arrest was based in part on Dellinger's "conversation" with Shy, the same conversation in which Shy gave his confession, effectively told the jury that Shy's unredacted statement named appellant. This evidence violated the hearsay rules as well as appellant's Sixth Amendment Confrontation Clause rights.

The State argues this is not truly a *Bruton* error, citing *United States v. Akinkoye,* 185 F.3d 192 (4th Cir.1999). In *Akinkoye,* the codefendants' confessions were retyped and the phrase "another person" substituted in each. The fourth circuit held the redacted statement did not facially implicate the other defendant. *Akinkoye* is inapposite: the issue here is not the redacted statement itself, but rather whether the statement when combined with Investigator Dellinger's reluctant identification of Shy as having implicated appellant in the crime was an error requiring that the court grant a mistrial. The State also argues harmless error based upon the trial judge's limiting instruction that the jury not consider anything removed from the redacted statement. This type of instruction cannot mitigate a Confrontation Clause violation. *Bruton, supra.*

There is no overwhelming evidence against appellant, as only Supercat's testimony places him at the scene and identifies him as a participant. Investigator Dellinger's "inadvertent slip" strongly implied that Shy's statement named appellant along with **"me"** as present and participating, when in fact appellant was not even named in that statement.

Appellant has demonstrated both constitutional error and prejudice. The trial court erred in denying his mistrial motion.

## CONCLUSION

Appellant's convictions are

**REVERSED.**

BEATTY, KITTREDGE and HEARN, JJ., concur. TOAL, C.J., dissenting in a separate opinion.

Chief Justice TOAL:

I respectfully dissent. While I believe error was committed at the trial court level, I do not believe that error is preserved for our review. The majority's opinion holds that the specific redaction created a *Bruton* violation. In my opinion, Frazier's statement should not have been redacted to begin with. The effect of the majority's opinion is to bring *Bruton* in through the back door. The purpose of the United States Supreme

Court's holding in *Bruton* was to prevent a defendant from being implicated by the statements or confession of a non-testifying co-defendant.

In my mind, there is nothing in Frazier's statement that implicates Johnson. To the contrary, Frazier stated that he and "Knock" were seated in Baker's car at the time of the shooting. Frazier's description of Knock at the *Jackson v. Denno* hearing did not fit the description of the defendant. Frazier stated that Knock had braids. At that same hearing, Officer Dellinger admitted that when he interviewed Johnson shortly after the murders, "[h]is hair was cut short." According to the trial testimony of Baker, Johnson and Frazier are cousins. However, Frazier's testimony regarding the identity of Knock does not reflect a familial relationship. Frazier stated that Knock "stay on the back street near the man who sell juice and other things...." Referring to how he knew Knock, Frazier stated, "I just got out in June and he get out in August." When asked directly by defendant's counsel to whom he was referring when he used the name Knock, Frazier elusively stated that "[i]t's a person," and then denied that person was Johnson. Therefore, Frazier's statement, in its original form, did not implicate Johnson. Had the full statement been before the jury, Officer Dellinger's testimony would not have implicated Johnson. It was the redaction itself that implicated Johnson, and therefore I do not believe these facts square with *Bruton.*

During a pre-trial hearing, defense counsel motioned the judge to either sever the trial or to rule Frazier's statement wholly inadmissible. The trial judge denied both these motions and instead chose to redact any reference to Knock contained in Frazier's statement. Why defense counsel did not then object to the redaction of an exculpatory statement is a mystery; however, that mystery may be better solved in a post-conviction relief hearing. This issue is not preserved, nor does it properly raise a *Bruton* issue. Therefore, I would affirm the conviction.